(No. 35703.—

KENNETH W. PINKSTAFF, Appellant, *vs.* THE PENNSYLVANIA RAILROAD COMPANY, Appellee.

*Opinion filed September 29, 1960—Rehearing denied Nov. 30, 1960.*

James A. Dooley, of Chicago, for appellant.

Robert H. Bierma, A. L. Foster, and Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago, (Howard Ellis, Max E. Wildman, and Frederick W. Temple, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

This court has granted plaintiff, Kenneth W. Pinkstaff, leave to appeal from a judgment of the Appellate Court, (23 Ill. App. 2d 507) affirming a circuit court judgment entered on a jury verdict awarding plaintiff damages

against his employer, the Pennsylvania Railroad Company, in the amount of $50,000 under the Federal Employers' Liability Act and the Federal Safety Appliance Act.

The essential issues involve the propriety of defendant's "theory of the case" instruction referring to plaintiff's alleged negligence in connection with his action under the Federal Employers' Liability Act, and the propriety of the court's post-trial orders authorizing defendant to amend its answer, and dismissing plaintiff's charges of defendant's misconduct at the trial.

We shall summarily review the circumstances and sequence of events insofar as they bear upon these issues. On March 29, 1955, at about 12:30 P.M., defendant's switching crew was bringing some empty hopper cars into Mine 32 of the Maumee Coal Co. at Linton, Indiana. Near the mine there is a thirty-foot-high tipple which conveys coal into the railroad cars. There are three tracks running north and south which converge about five car lengths south of that tipple, so that only one track is used for loading coal at the tipple. As the tracks proceed southward from the tipple they run upgrade to a clay embankment located at the south end of the tracks. The embankment is about four feet high. From this south end of the tracks the empty cars are allowed to roll downhill one at a time to be loaded at the tipple. The cars are each approximately 45 feet long and about 15 feet high.

At the time of the accident, the empty cars were being backed up southward from the switch onto track 1, with the locomotive at the rear. Plaintiff, Kenneth Pinkstaff, the rear brakeman, was riding on top of the leading car— the one most distant from the engine—in order to relay signals to the crew to control the movement of the train. According to plaintiff's testimony, Waggoner, the head brakeman, who was a replacement member of the crew, was not in his proper place, which was some seven or eight cars back from the engine and on top of the cars in position

where he could see plaintiff and relay his signals to the engineer. Waggoner apparently left the train when it stopped for the switch to be thrown.

Plaintiff testified that when the lead car on which he was riding was about ten car lengths from the south end of the track, he gave a "steady" signal, and when the car was about eight car lengths from the embankment he gave a "stop" signal. Nevertheless, the train continued to proceed southward at five or six miles per hour. Plaintiff thereupon realized that his signals were not being relayed to the engine crew, and he went down the ladder on the end car to apply the air brakes. While holding onto the ladder at the base with one hand, he "hit the air," or opened the angle cock, causing the air to be released simultaneously on each of the cars, including the engine, in an effort to stop the train. He further stated that when he opened the angle cock the lead car was about three car lengths from the embankment at the end of the track. In his opinion as an experienced railroad man, with 26 hopper cars in the cut moving about five miles an hour, the train should stop within 50 or 60 feet when the angle cock is opened on the end car, so that there was ample time for the train to stop before reaching the embankment. Nevertheless, the train did not stop, but continued southward to strike and break the embankment, crushing plaintiff between the car and the embankment.

There is some conflict in the record as to how far from the embankment the train was when plaintiff went down to set the angle cock, since the conductor stated that the lead car was then "at least two car lengths from the embankment." Under such circumstances, there would not have been sufficient time for plaintiff to climb down the 15-foot car, set the angle cock, and for the brakes to operate before the train would reach the embankment at the rate of speed it was traveling. There was also a conflict as to whether the customary method of stopping trains in this operation

was by hand signals relayed to the engineer, as plaintiff testified, or whether there were several methods, depending upon the conditions of the hill, as defendant's witness testified. The evidence was conflicting also with respect to whether plaintiff was required to use a tail hose to open the angle cock. Pinkstaff's testimony that he had never used an air hose on this job was corroborated by the conductor, Edwards, who also stated that there was no tail hose in the caboose at the time. The road foreman, Weirman, however, testified that shortly after he assumed his duties, he had issued a bulletin on March 16, 1952, which was displayed in the engine house at Bicknell, Indiana, requiring crews setting empty cars at the mines to use a tail hose. There was also a reference to a provision relating to the use of special equipment for opening the angle cock on moving cars, in the book of safety rules.

On the basis of substantially the foregoing evidence, along with evidence of the nature and extent of plaintiff's injuries and the stipulation of his earnings, the jury awarded plaintiff damages of $50,000. Plaintiff thereupon submitted various post-trial motions. He moved to strike defendant's amended answer, filed over a week after the conclusion of the trial, and also for a new trial. He alleged, among other things, that certain instructions were erroneous; that plaintiff had since learned that defendant's witness Weirman was guilty of perjury in his testimony respecting the issuance of the bulletin in 1952; that defendant failed to comply with a subpoena respecting salaries paid the men on the Martinsville job, even though the records were available, and after agreeing to produce the records, later objected to their introduction in evidence; and also that defendant failed to abide by a compromise offer and accord.

In support thereof, affidavits were submitted by plaintiff and his counsel. Plaintiff attested that Burge, a clerk employed by defendant, informed plaintiff that he had made

a search of the records at Bicknell, at the request of defendant's claim agent during the pendency of the trial, to find any bulletins issued by Weirman requiring the use of a tail hose, and that he found only a bulletin dated the day of the accident. Burge further told plaintiff that he brought the bulletin to the engine house foreman to take to the trial, and that this information was available to defendant before Weirman testified. These attestations were supported by Burge's post-trial deposition. The trial court denied plaintiff's motion charging defendant and its counsel with misconduct during the trial.

In connection with plaintiff's post-trial motion to strike defendant's amended answer, our attention is directed to the circumstances surrounding the authorization of the pleading amendments. From the partially recorded colloquy between the court and counsel, it appears that while plaintiff originally predicated his action on the Federal Employers' Liability Act, and went to trial on October 30, 1957, on that count, he was allowed to amend his complaint to add a count alleging defendant's violation of the Federal Safety Appliance Act in furnishing defective air brakes. There was some discussion on November 1, 1957, about allowing defendant's answer to stand as a denial to the additional count, and also of giving it 20 to 30 days to answer. There was also discussion of defendant amending its answer again on November 4, 1957, at the conference in chambers settling the instructions. At that time the trial court rejected plaintiff's original "theory of the case" instruction which set forth at length his own contentions and concluded with a statement that defendant denied such allegations. The court allowed defendant to submit its own "theory of the case" instruction—the controverted No. 17—which recited that defendant filed an answer alleging that plaintiff was contributorily negligent in certain respects in connection with the Federal Employers' Liability Act ac-

tion, and denying any violation of the Federal Safety Appliance Act.

In reliance on that instruction as a memorandum, and on the fact that the precise answer referred to therein was filed by defendant on November 13, the trial court ruled some eight months later that it had granted defendant leave to amend the answer on November 4, otherwise it would never have given the instruction. Consequently, the court certified the record to recite that leave to amend the answer had been given, and denied plaintiff's motion to strike the amended answer.

The Appellate Court affirmed the trial court's judgment and rulings, and we have granted plaintiff leave to appeal in order to clarify the law respecting such instructions and to scrutinize the grave charges made by plaintiff.

We shall consider first the propriety of the controverted instruction, which provides:

"The defendant in this case filed an answer to both counts of the plaintiff's complaint. The defendant denies that it or any of its agents or employees were guilty of any acts of negligence. In answer to Count I the defendant admits that plaintiff was injured but denies the extent of the injuries claimed.

"Furthermore, the defendant states that the plaintiff was not in the exercise of due care and caution for his own safety at the time of and immediately prior to the occurrence, and the defendant further states that the plaintiff was careless and negligent in the following respects:

Failed to keep a lookout in the direction in which the train was proceeding;

Failed to use a tail hose as provided and required by the rules in the Bicknell District;

Failed to operate the air brake in time to stop the train before it collided with a dirt embankment;

As to Count II the defendant further denied that it

violated the Federal Safety Appliance Act and denies that the air brakes in question failed to operate efficiently."

While the element of contributory negligence referred to in the controverted instruction is not a bar to recovery under the Federal Employers' Liability Act, that act does provide that contributory negligence may be relied upon to mitigate damages. (45 U.S.C.A., sec. 53). In fact, it has been held prejudicial error, and a denial of a Federal right, to deny defendant an instruction on contributory negligence as mitigating damages under the Federal Employers' Liability Act. *Kansas City Southern Railway Co.* v. *Jones,* 241 U.S. 181, 60 L. ed. 943; *Lee* v. *Louisville and Nashville Railroad Co.* 349 Ill. App. 276; *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.* v. *Cole,* (6th cir.) 260 Fed. 357.

Although instruction No. 17 does not refer to contributory negligence as mitigating damages, insofar as contributory negligence is an element in defendant's case, it was not error to include this element in its "theory of the case" instruction.

Nor did it become error by virtue of the fact that plaintiff's complaint included, in addition, a count under the Federal Safety Appliance Act. We recognize that the concept of negligence has no application to the Federal Safety Appliance Act (*O'Donnell* v. *Elgin Joliet and Eastern Railway Co.* 338 U.S. 384, 94 L. ed. 187), nevertheless, where claims under the Federal Employers' Liability Act and Federal Safety Appliance Act are combined, defendant does not forfeit his right to allege plaintiff's negligence in connection with the Federal Employers' Liability Act claim (*Carter* v. *Atlanta and St. Andrews Bay Railway Co.* 338 U.S. 430, 94 L. ed. 236). It is necessary only that the instructions observe a clear separation of the two kinds of actions (*O'Donnell* v. *Elgin, Joliet and Eastern Railway Co.* at p. 393). Inasmuch as it is unmistakably clear from instruction No. 17 that defendant is alleging plaintiff's con-

tributory negligence only in connection with the Federal Employers' Liability Act claim in count I, and that with respect to the Federal Safety Appliance Act claim in count II defendant is merely denying a violation of that act, the instruction cannot be deemed objectionable for improperly comingling the elements of these claims.

Moreover, in this connection we note that plaintiff's instruction No. 4a specifically informed the jury that any negligence of plaintiff had no application to the Safety Appliance Act, and since instructions must be evaluated as a series, the jury could not have been confused in this respect.

Plaintiff argues, however, that by the controverted instruction No. 17 the jury were told that defendant's violation of the Federal Safety Appliance Act could be relied upon in mitigation of damages. We cannot perceive how any such interpretation could be drawn. Defendant's violation of the Safety Appliance Act would be in furnishing trains with defective brakes. In the absence of any direct evidence of brake failure in this record, the existence of such defective brakes could be established, as plaintiff points out, by circumstantial evidence. Such evidence, however, would have to show not merely that the train failed to stop when the brakes were set, but that the brakes failed to operate when applied in proper time. No inference of brake failure could be drawn from the failure of the train to stop unless the brakes were applied in time for them to operate. Thus, if plaintiff were contributorily negligent in failing to apply the brakes in time, that would preclude a finding by circumstantial evidence that the brakes were defective, or that defendant violated the act. Consequently, plaintiff's contributory negligence and defendant's violation of the Federal Safety Appliance Act are mutually exclusive; and defendant, in referring to plaintiff's contributory negligence in the instruction, is in no way using its own violation of the act to mitigate damages, as plaintiff contends.

Nor do we find the instruction objectionable for failure

to state that plaintiff's contributory negligence caused or contributed to the injury. Since the instruction was not peremptory, it did not need to include all the operative elements of the claim. (*Goldberg* v. *Capitol Freight Lines, Ltd.* 382 Ill. 283.) Moreover, the jury was specifically informed by instruction No. 11, given at plaintiff's request, that the jury must find that the negligence of plaintiff contributed to his injury in order to lessen damages proportionately.

On the basis of our analysis, therefore, we can find no merit to any of the objections to instruction No. 17 interposed by plaintiff, and its submission to the jury cannot be deemed error.

Plaintiff contends further that the order reciting that defendant had been permitted to amend its answer, entered some eight months after trial, was improper. In support of this alleged error, plaintiff cites *People* v. *Miller,* 365 Ill. 56, 58, where the court reiterated the rule that an amendment of the record cannot be made by oral testimony, or from the recollection of the trial judge himself, but must be proved by the production of some note or memorandum from the record or *quasi* records of the court, or by the judge's minutes, or by the papers on file in the cause. Since the trial judge herein, in ruling that defendant had been granted leave to amend its answer as of November 4, 1957, specifically stated that he relied upon instruction No. 11 as the written memorial, we find no infringement of the rule. The court noted that the instruction, which was granted on November 4, 1957, at the conference on instructions recited that defendant had filed an answer, and set forth the same allegations as those incorporated in the controverted amended answer. Consequently, the court stated (as appears from the poorly reported record), "I would never have instructed the jury that he filed an answer to both counts if I didn't treat that thought that I had given him permission to treat it as though on that date it was in the

file." Thus, the reference in the instruction to the answer as amended, in addition to the fact that the parties themselves treated the amended answer as filed, and the fact that the amended answer was in fact filed on November 13, 1957, a week after leave to amend was supposed to have been given, certainly substantiates the action of the trial court, and precludes a finding of error on this issue.

The action of the trial court is entirely in conformity with the liberal provisions of our Civil Practice Act allowing pleadings to be amended before and after judgment. Ill. Rev. Stat. 1959, chap. 110, par. 46(3).

We consider finally the trial court's dismissal of plaintiff's charges of misconduct by defendant and its counsel in the conduct of the trial, as set forth in the affidavits which plaintiff claims the Appellate Court refused to consider. The fact that the road foreman Weirman may have known before testifying that the only tail hose bulletin found after a search of the records was dated the day of the accident did not convert into perjury his statement that he had issued an earlier bulletin on the subject in 1952, when he first assumed his duties. In fact, the record shows that similar bulletins were issued in 1949 by the yardmaster, and in 1956 by Weirman's successor. The existence of one bulletin does not preclude the existence of others, or indicate that any such assertion would be a bold lie.

We have given careful scrutiny to the charges of misconduct, and find that the trial court did not err in dismissing them. Nor was any other prejudicial error made in the trial of this cause. Therefore, the judgment of the Appellate Court, affirming the judgment of the trial court, will be affirmed.

*Judgment affirmed.*