Fulton Street Wholesale Market Co., an Illinois Corporation, Plaintiff-Appellee, v. Melvin Guggenheim, Defendant and Third Party Plaintiff-Appellee and Cross Appellant, v. Simon Alport, Third Party Defendant-Appellant.

Gen. No. 49,279.

First District, First Division.

June 22, 1964.

Rehearing denied August 3, 1964.

Glink & Glink, of Chicago, for appellant.

Edward J. Rothman and Herman L. Aaron, of Chicago, for appellee, Fulton Street Wholesale Market Co. Lowitz, Vihon & Lowitz, of Chicago (Jack Vihon, Donald S. Lowitz and Barry D. Sherman, of counsel), for appellee, Melvin Guggenheim.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Third-party defendant, Simon Alport, appeals from a judgment entered against him and in favor of the plaintiff, Fulton Street Wholesale Market Company and defendant third-party plaintiff, Melvin Guggenheim. The defendant third-party plaintiff Melvin Guggenheim cross-appeals from a denial of his claim for special damages he sought from Alport.

On March 27, 1962 the plaintiff obtained a judgment by confession against defendant Guggenheim for $805.42 for rent due on a lease signed by Guggenheim and Alport as colessees.

On May 4, 1962 [1] Guggenheim filed motion to open up the judgment and for leave to plead to the merits. In the affidavit supporting his motion he admitted signing the lease as colessee with Alport for the premises at 833 W. Fulton Street, Chicago, beginning February 1, 1962 until January 31, 1963 at a monthly rental of $600. Prior to the execution of the lease, he had an oral understanding with Alport as to the sharing of the premises and proportionate payment of the rent. When he and his employees attempted to take possession in accordance with the lease, they were prevented from so doing by Alport who was already in possession under a prior lease. Defendant

[1] Guggenheim was served with execution on April 6, 1962. His motion was filed within thirty days thereafter.

218

informed the plaintiff, through its president R. A. Sweeney, of Alport's action.

Guggenheim was a wholesale meat dealer. The custom and usage in the wholesale meat business and the nature of operations at the Fulton Street Wholesale Meat Market was for wholesale dealers to provide space and telephone facilities for their peddler-customers and for them to take orders which they would place with the dealers. One Patrick Culliane, a peddler and customer of Guggenheim, had been the former colessee with Alport in the premises under the lease expiring January 31, 1962. Guggenheim desired that Culliane have use of office space and telephone facilities in his alloted portion of the leased premises under the new lease. Alport objected to Culliane's contemplated use thereof. Sweeney, president of the plaintiff company, also informed Guggenheim that he did not want Culliane on the premises. Guggenheim wished to retain Culliane's business and alleged he was within his rights in providing Culliane with the use of the facilities. He charged Sweeney and Alport with a conspiracy designed to prevent his use of the premises and that this constituted an eviction and breach of the terms of the lease. He claimed that the fact that plaintiff accepted Alport's tender of $250 per month on the lease [2] and did not confess judgment against him, was evidence of such alleged conspiracy. He contended, therefore, that Alport was a necessary party to the proceedings and prayed summons issue against him as a third-party defendant.

On June 28, 1962 the court denied the motion to open the judgment and confirmed the same. The court further granted the defendant Guggenheim leave to file a third-party statement of claim and directed

---

[2] Guggenheim was to pay the balance of $350 per month on said lease.

that summons issue as to Alport. All further proceedings on the judgment were stayed pending disposition of the third-party action.

On June 29, 1962 defendant, Guggenheim filed his third-party statement of claim against Alport containing substantially the same averments as were in his affidavit. He asked to be relieved of liability for the accrued and future rent under the lease or until Alport allowed him possession of the premises. The third-party statement of claim prayed special damages in the sum of $10,000 for breach of the contract resulting in loss of profits and for a declaration that Alport unlawfully withheld possession from him, and that Alport be ordered to surrender possession of the premises, or in the alternative, be declared liable in full on the lease.

Alport's answer to the third-party statement of claim admitted the padlocking, but alleged that the key was available to defendant third-party plaintiff Guggenheim upon request. He denied that Guggenheim or his employees were not allowed to enter the premises. He denied the conspiracy with the plaintiff but charged that the defendant third-party plaintiff Guggenheim conspired with Culliane to avoid the covenant of the lease against subleasing without consent of the landlord-plaintiff. A reply to the answer was filed and issues having been drawn, the cause was set for trial.

On January 31, 1963 the third-party action was heard by the court without a jury and taken under advisement. On February 19, 1963 a judgment in the amount of $4,305.42 was entered in favor of the defendant third-party plaintiff Guggenheim and against the third-party defendant, Alport. On March 12, 1963 the court entered a judgment order nunc pro tunc as of February 19, 1963, granting plaintiff Fulton Street Market leave to file instanter its amended statement

of claim and ordering the answers of the other parties to stand as answers thereto. The court further entered judgment in favor of plaintiff Fulton Street Market against both defendant third-party plaintiff Guggenheim and third-party defendant Alport in the sum of $4,305.42. It provided that "this judgment order includes and supersedes the judgment order heretofore entered on March 27, 1962." And further the order provided that defendant third-party plaintiff Guggenheim have judgment against Alport for the sum of $4,305.42.

Plaintiff's amended statement of claim simply averred the subsequent facts and proceedings transpiring after the judgment by confession and prayed judgment on the lease against both lessees, Alport and Guggenheim, for the full amount, the term of the lease having now expired. It prayed that the previous $805.42 judgment be superseded by the final order.

It is Alport's contention that the trial court exceeded its jurisdiction and acted contrary to the rules of the Municipal Court of Chicago in allowing defendant third-party plaintiff Guggenheim to file his third-party statement of claim without first vacating or opening the judgment by confession, and thereby its action in this regard was null and void.

■■ The determination of this question rests upon the application and interpretation of the rules of the Municipal Court then effective. The Municipal Court of Chicago having plenary powers, the Illinois Practice Act and section 2 thereof dealing with the rule-making power of the Supreme Court of Illinois, had no application to the case (Ptacek v. Coleman, 364 Ill 618, 5 NE2d 467 (1936)). But to facilitate practice and procedure in the Municipal Court the judges thereof promulgated rules to conform as nearly as possible to the Civil Practice Act and the Supreme Court rules. Therefore, any references herein to sections of the

Act and Supreme Court rules would also apply to the Municipal Court except as we may otherwise specify.

The provisions of the Civil Practice Act, Rules of Courts and judicial pronouncements have tended to relax the limitations upon actions. They lean toward a broader interpretation and practice as to who may be joined as parties and what the restrictions are as to issues and controversies in a single action.

In State Bank of Blue Island v. Kott, 323 Ill App 27, 54 NE2d 897 (1944) the trial court denied defendant's motion for leave to file a counterclaim to a judgment by confession. The reviewing court said at pages 28, 29: "The sole question for decision is whether the court erred in denying defendant's motion. Plaintiff contends that the general rule that a judgment by default or confession will not be set aside in the absence of a showing that the defendant has a defense on the merits is applicable here, and that under it a judgment will not be opened or vacated merely to permit a defendant to file a counterclaim. . . . We hold the provisions of the present Civil Practice Act are controlling.

"Section 4 of that Act . . . provides:

"This Act [3] shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this Act or the rules made pursuant thereto. . . .'

"The procedure under which judgment may be confessed is set forth in section 50(5) [4] of the act . . . ; and that under which such a judgment may be opened

---

[3] Municipal Court Rule 1, sec 4 substituted the word "Rules" for the word "Act."

[4] Municipal Court Rule 1, sec 50(4).

up or set aside is set forth in Rule 26 [5] of the Supreme Court. . . ."

Continuing further, the court said. on pages 29, 30: "[P]laintiff does not contend that the affidavit of defendant here in any respect fails to conform to the rule. The substance of its defense is that a counterclaim is not a defense to a judgment entered by confession. Under a strict construction of the statute and of the word 'counterclaim,' as formerly used, it might well be so held. We have already seen that any strict construction of either rule or statute is forbidden by section 4 of the act. In our opinion plaintiff's contention is rendered impossible by section 38 of the act [6] . . . which provides:

'(1) Subject to rules, any demand by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of set-off, recoupment, cross-bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross-demand in any action, and when so pleaded shall be called a counterclaim.

'(2) The counterclaim shall be a part of the answer, and shall be designated as a counterclaim.

'(3) Every counterclaim shall be pleaded in the same manner and with the same particularity as a complaint, and shall be complete in itself, but allegations set forth in other parts of the answer may be incorporated

---

[5] Rule 2, sec 23 of the Municipal Court.

[6] This section is identical with Municipal Court Rule 1, sec 38 except the phrase "subject to rules" at the beginning was deleted and the term "statement of claim" is substituted for "complaint" wherever it appears.

by specific reference instead of being repeated.'

"On this section the annotater well says:

'This provision is of a sweeping character, and does away with all former technicalities respecting the interposition, the pleading of and the distinctions between cross-demands. Because of this fact, the bulk of decisions under the former Chancery and Practice Acts are of little persuasive authority.' "

The court reversed and remanded with directions to the trial court to enter an order opening up the judgment and giving leave to defendant to file his counterclaim.

Interestingly enough, Rule 2, sec 23 of the Municipal Court thereafter was amended to conform to the expressions contained in the State Bank case and paragraph 3 was added thereto reading as follows:

"(3)  If an order is entered opening the judgment, the defendant may assert any counterclaim.

"If a defendant files a motion supported by affidavit as provided by sec 15 of Rule 2 hereof which does not disclose a defense to the merits but discloses a counterclaim against the plaintiff and the defendant has been diligent in presenting his motion, the court may permit the filing of the counterclaim and stay all proceedings on the judgment by confession until the counterclaim is disposed of. The plaintiff may file counter-affidavits as to diligence."

This amendment was effective at the time of these proceedings in the lower court. On December 2, 1963

our Supreme Court adopted an amended Rule 23, effective January 1, 1964, wherein a similar provision for the filing of a counterclaim is provided.[7] By this provision the court may permit the filing of a counterclaim without opening or vacating the judgment by confession.

There remains the question of whether the court may permit the bringing of new parties, in addition to the original plaintiff, as cross-defendants to a counterclaim. This matter appeared before our Supreme Court in the case of Johnson v. Moon, 3 Ill2d 561, 121 NE2d 774 (1954). The litigation related to a collision between a car driven by the defendant's decedent and a tractor-trailer, the ownership and operation of which were disputed upon the pleadings. The counterclaim alleged that the tractor-trailer was owned and operated by cross-defendants. It also alleged that defendant's decedent was fatally injured in the collision due to the negligence of the cross-defendants and/or the plaintiff. Defendant sought recovery under the Wrongful Death Act and for damages to the decedent's automobile. On page 565 of its opinion the Supreme Court, after citing sec 38 of the Practice Act, stated: "Section 25 [8] of the act provides, 'Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may effect, the court, on application, shall direct him to be made a party.' "

---

[7] "If a defendant files a motion supported by affidavit which does not disclose a defense to the merits but discloses a counterclaim against the plaintiff, and defendant has been diligent in presenting his motion, the trial court may permit the filing of the counterclaim and stay all proceedings on the judgment by confession until the counterclaim is disposed of."

[8] Municipal Court Rule 1, sec 25 is identical.

The appellees in that case contended first that section 38 alone governed the right to file a counterclaim and that section 25 had no application, and that the specification of "plaintiffs" and "defendants" indicated an intention to restrict a counterclaim to those already made parties to the action by the complaint. They also contended that even if section 25 has a bearing on section 38 it was not controlling there, since the "controversy" between the defendant and the original plaintiff could be determined without the presence of the other parties sought to be brought in. The court, in passing on these contentions said, beginning on page 565: "Even if we assume that the language of section 38 limits counterclaims to original parties to the action, we cannot accept the view that it should be construed as an isolated text. No reason is advanced to support such a departure in this case from the established course, which contemplates that 'the several provisions of the statute should be construed together in the light of the general purpose and object of the act, so as to give effect to the main intent and purpose of the legislature as therein expressed.'

"The provisions of the Civil Practice Act concerning joinder of parties, of causes of actions, and counterclaims, effected substantial changes in the procedure theretofore existing. . . .

"The Civil Practice Act establishes quite different standards to govern the joinder of parties and of causes of action whether at law or in equity. As between a single plaintiff and a single defendant, it permits the joinder of causes of action without limitation, subject only to the formal requirement that separate causes of action be separately stated. (Secs 43, 44; . . .) [9] Joinder of multiple plaintiffs and of

[9] Municipal Court Rule I, secs 43, 44.

multiple defendants now depends broadly upon the assertion of a right to relief, or a liability, arising out of the same transaction or series of transactions and the existence of a common question of law or fact. (Secs 23, 24; . . .) [10] New parties may be brought in when their presence is necessary for a complete determination of the controversy or where they have an interest or title which the judgment may effect. (Sec 25; . . .) At any time before judgment, amendments may be allowed, introducing any party who ought to have been joined in order to enable the plaintiff to sustain his claim 'or the defendant to make a defense or assert a cross-demand.' (Sec 46; . . .) [11] Any demands whatsoever of a defendant against a plaintiff may now be made subject of a counterclaim regardless of their relation to the claim asserted by the plaintiff. (Secs 43, 44; . . .) Provision is made for consolidation and severance of issues, and for the entry of more than one judgment in the same case. (Secs 23, 44, 50, 51; . . .) [12]

"These provisions show a deliberate purpose to relax the common-law limitations upon the scope of an action and to broaden the rules as to those who may be joined as parties. In many respects, the equitable standard of administrative convenience is substituted for the restrictive rules of the common law; in other instances, notably in the unrestricted permission to assert claims and cross-demands between a single plaintiff and a single defendant, the statute expands the scope of action beyond the former equitable limits. The power of the trial court to sever and to consolidate is relied upon to achieve orderly administration in the case of unlimited joinder of

[10] Municipal Court Rule I, secs 23, 24.
[11] Municipal Court Rule I, sec 46.
[12] Municipal Court Rule I, sec 51 is identical.

227

claims where a single plaintiff and a single defendant are involved. An additional safeguard which accompanied the broad joinder of multiple parties which the act permits is the requirement that the matters to be litigated arise from the same 'transaction or series of transactions' and involve a common question of law or fact.

"In the light of these considerations, we think that the introduction of new parties as cross-defendants is authorized by the statute. Section 38 provides for the filing of counterclaims whether in the nature of 'cross-bill in equity or otherwise.' The addition of new parties as defendants to a cross-bill in equity was familiar practice to Illinois prior to the enactment of the Civil Practice Act. (Citing authorities.) There is no suggestion of a purpose to eliminate that practice. And the introduction of new parties is also implied by the clear provision in section 46 for the introduction of new parties by amendment when necessary to enable defendant to sustain his cross-demand. It could hardly have been intended that the power of joinder permitted by amendment to a counterclaim should be broader than that permitted initially."

We quote this authority at length because we believe that the pronouncements therein clearly apply to the situation in the instant case. The trial court felt that Guggenheim asserted no defense to the merits of the judgment by confession but did allege facts establishing a controversy relating to the same transaction or series of transactions there involved and that Alport was a necessary party in order to determine the controversy over the lease. If the cause of action asserted in the third-party statement of claim had been advanced by an independent action, proper judicial administration would require that the cases be consolidated. We, therefore, hold that under these

228

circumstances the court properly allowed the filing of a third-party action and directed that Alport be made party to the cause.

Alport contends that he was denied an opportunity to assert his defenses to the original claim for rent as provided for in Rule I, sec 25(2). He argues that a third-party proceeding cannot be entertained after a judgment has been entered on the plaintiff's original claim. If, as we hold here, the court had power to allow the filing of a third-party statement of claim and could stay all proceedings on the judgment by confession until the third-party action or counterclaim was disposed of, then such judgment was not completely final but was subject to further order of the court. There could be no purpose in staying all proceedings on the judgment if the court in adjudicating the rights of the parties to the third-party action or counterclaim could not affect the original judgment. Jurisdiction over the judgment must be retained by the court until final disposition of the subsequent proceedings to give effect to the rule. The court retains jurisdiction to carry out its findings and protect the rights of the parties including those expressed in the judgment. The judgment stands in abeyance before the court until it has an opportunity to determine all the *rights* of the parties in the case.

Counsel for Alport claims that the court lacked the power to enter an order to "supersede" the original judgment entered almost a year previously. The previous judgment was not final in the sense that the court had no right to vacate, modify or otherwise change it. The order of March 12, 1963, after a full determination, adjudicated all rights of the parties. The term of the lease had then expired, the rents from April 1962 to and including January 1963 had become due and payable in addition to the rents for February and March of 1962 for which the first judg-

ment order was entered. The parties had acquiesced to proceed in this manner and the issues were thusly decided. If, as we hold, the court could determine the entire controversy, it follows that the court could enter a final determinative judgment which simply added the subsequent rents due to the original judgment by confession entered during the pendency of the lease.

■ Again, Alport argues that the court had no authority to grant leave to plaintiff to file the amended statement of claim because he was entitled to be served with a copy thereof; should have been given an opportunity to file a responsive pleading thereto; have an opportunity to defend and had the right to file a jury demand on the issues raised by the amended statement of claim. The authority to grant leave to amend a pleading to conform to the proofs is given by Rule I, sec 46 of the Municipal Court Rules. It may be given at any time before or after judgment and upon terms as to costs and continuances that may be just. (Pinkstaff v. Pennsylvania R. Co., 20 Ill2d 193, 203, 170 NE2d 139 (1960).) Alport's original counsel filed an appearance to the third-party action without a jury demand, filed the answer and proceeded to trial of the issues created thereby, before the court, without objection. The issues involved the entire controversy on the lease and the court made a complete determination. In order to enter the proper judgments plaintiff's pleadings should conform to the proofs. The plaintiff's amended statement of claim did not create any new controversies or issues. There were no new or additional matters to be decided. It would be purposeless to open up a new series of pleadings when nothing useful could be accomplished. Alport had a full and fair trial of his contentions.

Guggenheim, in his cross-appeal, contends that he was entitled by this third-party action to $10,593.06

special damages incurred as a direct result of Alport's preventing him from enjoying the possession and use of the premises under the terms of the lease and agreement for the sharing of the premises. These were damages for profits he would have made as a result of being able to utilize the additional space granted him by the lease.

From the evidence we find that for the two years prior to the effective date of the lease in question Alport and Culliane occupied the premises as cotenants. Alport had the rear part of the premises, used one-third of the cooler space and paid $250 per month toward the rent. Culliane had the use of the remainder of the premises, used the remaining two-thirds of the cooler space and paid the $350 per month balance of the rent. During all of the time here involved Alport had three peddler-customers who used his part of the premises, made their calls and stored their meat in the premises. They paid Alport $75 per month for such use. Culliane expressed an intention not to renew the lease. Alport then sought Guggenheim as cotenant from February 1, 1962 on the same terms as he had with Culliane. In the discussions prior to the execution of the new lease Alport and Guggenheim agreed to the sharing as described above and also to the necessary changes Guggenheim was to make prior to his occupying the premises. The instant lease was executed on January 9, 1962. When Guggenheim attempted to install phone connections, Alport expressed his objections to the phone situation claiming he did not wish Culliane to use any part of the premises, although Guggenheim claimed him as a customer-peddler with whom he had considerable business for some time. Sweeney, president of the plaintiff corporation, objected to Culliane because he had five trucks and tied up parking in the already congested area. Alport denies that he refused Guggen-

heim or his employees access but there was sufficient evidence to maintain a finding that he did do so for some period of time. Alport continued to pay the $250 per month to the end of the lease period. The judgment by confession was for Guggenheim's share of the first two months rent. The subsequent judgment was for Guggenheim's share of the rent for the balance of the lease.

█ We find that the evidence was sufficient to sustain the lower court's judgment that Alport was obligated to pay Guggenheim for such sums as Guggenheim was liable to pay on the lease. We are convinced from further examination of the proofs that Guggenheim failed to satisfy the burden of proving special damages. The evidence in connection with this phase was highly speculative and conjectural and the court had no basis upon which a specific finding could be established. The court properly denied his demand for special damages.

We, therefore, hold that the lower court did not err and its orders and judgments are affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.