Filed 10/15/09          NO. 4-08-0775

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| DAVID LEE MERRITT, | ) | No. 04CF964 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Drazewski, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Defendant, David Lee Merritt, appeals from the summary dismissal of his petition for postconviction relief. He argues that the addition of mandatory supervised release to his sentences of imprisonment resulted in a punishment more onerous than the maximum punishment to which he agreed in his guilty-plea hearing. He argues this was a unilateral modification of the plea agreement and a violation of his right to due process.

The parties agreed the sentence would be capped at 25 years' imprisonment. The trial court sentenced defendant to concurrent prison terms of 23 years and 5 years. Statutory law added a three-year term of mandatory supervised release. Defendant has failed to establish that 23 years' imprisonment plus 3 years of mandatory supervised release is a more onerous punishment than 25 years' imprisonment. Mandatory supervised release simply is not comparable to imprisonment. Therefore, we affirm the trial court's judgment.

## I. BACKGROUND

On November 10, 2004, a grand jury returned an indictment charging defendant with four offenses, all arising from his physical abuse of Nevada Perez on October 31, 2004. Count I charged him with home invasion (720 ILCS 5/12-11(a)(2) (West 2004)). Count II charged him with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2004)) in that he hit Perez. This offense was a Class 4 felony because previously, in McLean County case No. 95-CF-1075, he was convicted of attempt to commit first-degree murder. See 720 ILCS 5/8-4(a), 12-3.2(b) (West 2004). Count III charged him with violating an order of protection (720 ILCS 5/12-30(a)(1) (West 2004)). Count IV charged him with felony domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2004)) in that he put his hands around Perez's neck and threatened to kill her. Again, because of his previous conviction of attempt to commit first-degree murder, this offense was a felony.

On June 3, 2005, the parties appeared before the trial court for a guilty-plea hearing. Illinois Supreme Court Rule 402(b) (177 Ill. 2d R. 402(b)) required the court to "confirm the terms of the plea agreement" "by questioning the defendant personally in open court." Therefore, the court recited the terms of the plea agreement. Defendant would plead guilty to counts I and II of the indictment. In return, the State would dismiss the remaining two counts, and defendant would receive a sentence of imprisonment no greater than 25 years. He would reserve the right to receive imprisonment for less than 25 years, but, by statutory law, the sentence had to be at least 6 years' imprisonment. See 720 ILCS 5/12-11(c) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004). The court asked defendant: "Is that your general understanding of what will take place on today's date?" He answered yes.

At this point in the guilty-plea hearing, when confirming the terms of the plea agreement, the trial court said nothing about mandatory supervised release. Unless the sentence was life imprisonment, section 5-8-1(d) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(d) (West 2004)) added a term of mandatory supervised release (formerly called "parole") to every sentence of imprisonment "as though written therein." The higher the class of felony, the longer was the term of mandatory supervised release. See 730 ILCS 5/5-8-1(d)(1) through (d)(3) (West 2004). Because home invasion in violation of section 12-11(a)(2) of the Criminal Code of 1961 (720 ILCS 5/12-11(a)(2) (West 2004)) was a Class X felony (720 ILCS 5/12-11(c) (West 2004)), section 5-8-1(d)(1) of the Code (730 ILCS 5/5-8-1(d)(1) (West 2004)) would add three years of mandatory supervised release to whatever sentence the court imposed on count I, if defendant were adjudged guilty of that count.

Before accepting defendant's guilty pleas, the trial court had to give him the following admonitions and, by addressing him personally in open court, make sure he understood the admonitions:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

- 3 -

(4) that if he pleads guilty[,] there will not be a trial of

any kind, so that by pleading guilty[,] he waives the right to a

trial by jury and the right to be confronted with the witnesses

against him; or that by stipulating the evidence is sufficient

to convict, he waives the right to a trial by jury and the right

to be confronted with any witnesses against him who have

not testified."  177 Ill. 2d R. 402(a).

After reciting to defendant the allegations in counts I and II and making

sure he understood those allegations and that he wished to plead guilty to them, the trial

court proceeded to the second admonition in Rule 402(a), namely, the minimum and

maximum penalties he could incur for counts I and II.  According to the transcript of the

hearing, this is what the court told defendant with respect to count I:

"THE COURT:  The first offense, home invasion, is a

Class X felony[,] and what that means is that carries with it

certain penalties that the court will be able to consider under

the statute and then[,] as further refined or honed down as a

result of the plea agreement that was being submitted to me

on today's date, under the statutory penalties which could be

imposed as to this case, it would carry with it a minimum

term in the Department of Corrections of not less than [6]

years nor more than 30 years in the Department of

Corrections.  In the event you're eligible for an

extended[-]term sentence in this case, it would appear that

- 4 -

you would[,] based upon my reading of just the allegation in [c]ount [II], potentially you could be looking at a term of up to 60 years in the Department of Corrections. You could also be find [sic] up to $25,000 or both.

Were you sentenced to the Department of Corrections, and so there's no stone unturned here, which is a mandatory sentence, no matter what happens here, it will involve a sentence to the Department of Corrections [sic] that would be for a term of three years.

In this case, once again, Mr. Merritt, the [S]tate has agreed to bind itself to request not more than 25 years in the Department of Corrections. Is that your understanding as to what could or might take place with respect to this particular offense?

THE DEFENDANT: Yes."

Next, the trial court told defendant the minimum and maximum penalties he would face if found guilty of count II:

"THE COURT: Now [c]ount [II], that offense, domestic battery, is a Class 4 felony and as a result of the penalties, although described by statute are substantially less than what those are for the Class X felony, specifically, you could be placed once again in the Department of Corrections, ordinarily that is a term of not more than three years,

however, based upon your previous criminal history, that could be up to six years in the Department of Corrections.

You could also be fined up to $25,000 or both[,] and there's a one-year period of mandatory supervised release. For this particular offense, you could also be placed upon a term of probation or conditional discharge.

So, realistically, on this charge[,] it is contemplated that those sentences will run concurrent with one another, counsel?

MS. DAVIS: Yes.

MS. FOSTER: Yes."

After making sure defendant understood that six years' imprisonment was the maximum for count II but only the minimum for count I, the trial court asked counsel the following question:

"THE COURT: Why don't counsel tell me[,] before the court would conditionally consider accepting the plea of guilty, what information is available, realizing that there is going to be a pre[]sentence investigation prepared, what does the defendant's previous criminal history consist of?

MS. FOSTER [(assistant State's Attorney)]: The only history we are aware of is there's a *** conviction [of attempt to commit murder, for] which he received 16 years in the Department of Corrections ***.

THE COURT: Is he currently out on parole or on parole at the time he committed these offenses?

MS. FOSTER: I do not believe he was.

THE COURT: No parole hold, Mr. Merritt?

THE DEFENDANT: Yes, parole hold and returned back to the [D]epartment [of Corrections].

No, I haven't been. I was remanded here.

THE COURT: It may have occurred during the period when the defendant was on parole.

Was that also a three-year term of parole or [']mandatory supervised release['] as they now refer to it?

THE DEFENDANT: Yes.

THE COURT: Okay. You said it was a 16-year sentence?

MS. FOSTER: Yes.

THE COURT: Class X or [1]?

MS. FOSTER: X.

THE COURT: So[,] same class as here, which makes him eligible for [an] extended term. Okay. We'll keep going."

The trial court then gave defendant the third admonition in Rule 402(a), explaining to him the rights he would give up by pleading guilty. Pursuant to Rule 402(b) (177 Ill. 2d R. 402(b)), the court questioned him on the voluntariness of his plea.

- 7 -

The court then obtained a factual basis from the prosecutor, and defense counsel agreed that the State had witnesses who would testify substantially as the prosecutor had indicated. See 177 Ill. 2d R. 402(c). The court then entered a finding of guilt on counts I and II and conditionally accepted the plea agreement. The court explained to defendant that if it ultimately rejected the plea agreement, he could withdraw his guilty pleas.

On August 24, 2005, the trial court held a sentencing hearing. After considering the presentence investigation report, a victim-impact statement, evidence in mitigation, defendant's statement in allocution, and counsel's recommendations, the trial court ratified the plea agreement and sentenced defendant to 23 years' imprisonment for count I and 5 years' imprisonment for count II, ordering that the terms run concurrently. The court also ordered defendant to pay the following fines, fees, and assessments: $292 in court costs (730 ILCS 5/5-9-1 (West 2004)), $20 as a statutory surcharge (730 ILCS 5/5-9-1(c) (West 2004)), $4 as an additional state surcharge (730 ILCS 5/5-9-1(c-9) (West 2004)), $25 to the Violent Crime Victims Assistance Fund (725 ILCS 240/10 (West 2004)), $200 for the analysis of his deoxyribonucleic acid (DNA) (730 ILCS 5/5-4-3 (West 2004)), $10 as a domestic-battery fine (730 ILCS 5/5-9-1.6 (West 2004)), and $4,240 in restitution to Perez (730 ILCS 5/5-5-6 (West 2004)).

Defendant took no direct appeal from these convictions and sentences, but on November 13, 2006, he appealed from the trial court's refusal to provide him free transcripts. (In a letter dated October 3, 2006, the court explained to him that under Illinois Supreme Court Rule 471 (134 Ill. 2d R. 471), he had no right to free transcripts until he filed a postconviction petition.) On March 19, 2007, we dismissed that appeal

- 8 -

on defendant's motion.  People v. Merritt, No. 4-06-1042 (March 19, 2007) (dismissing on appellant's motion).

On August 7, 2008, defendant filed a petition for postconviction relief.  In his petition, he alleged that in the guilty-plea hearing, the trial court never admonished him regarding mandatory supervised release and that the addition of three years' mandatory supervised release to his sentence was a unilateral modification of the plea agreement and, as such, a violation of due process.  See People v. Whitfield, 217 Ill. 2d 177, 195, 840 N.E.2d 658, 669 (2005).

On September 19, 2008, the trial court filed an order summarily dismissing the postconviction petition as frivolous and patently without merit.  See 725 ILCS 5/122-2.1(a)(2) (West 2008).  In its order, the court stated as follows:

"Like the defendant in Whitfield, the petitioner's sentencing order does not reflect the MSR [(mandatory supervised release)] term.  Unlike the defendant in Whitfield, after the court admonished the defendant regarding his charges, the court did admonish the defendant regarding his possible sentence and required three-year MSR term.  However, in regard[] to the admonishment [as to] the required three-year MSR term[,] the transcript provides that the court stated[,] '[W]ere you sentenced to the Department of Corrections, and so there's no stone unturned here, which is a mandatory sentence, no matter what happens here, it will involve a sentence to the Department of Corrections that would be for

a term of three years.'  [Citation to record.]  Under Illinois Supreme Court Rule 329 [(210 Ill. 2d R. 329)], material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court or a judge thereof. This judge finds the transcript is err[oneous] and must be amended to correctly state what was said in open court[,] [i.e.,] '[W]ere you sentenced to the Department of Corrections, and so there's no stone unturned here, which is a mandatory sentence, no matter what happens here, it would include a mandatory supervised release term of three years.'  The court was clearly discussing the MSR term because it would be impossible for the petitioner to have just a mandatory term of imprisonment in the Illinois Department of Corrections for three years because [c]ount [I] by itself has a term of at least [six] years in the Illinois Department of Corrections.  Practically speaking, had the trial court stated what the transcript prior to proper amendment provides, one or both of the attorneys would have corrected the trial court in order to avoid an improper admonishment.  Mistakes are made in court[,] and no one is perfect.  This court has made mistakes and will make

mistakes in the future. However, here the mistake was one of transcription by the court reporter and must be corrected."

The trial court further concluded that "defendant failed to prove[,] by an objective standard[,] that his mistake as to the MSR term was justified." The court reasoned as follows:

"When the court discussed the defendant's previous attempted[-]murder conviction, a Class X felony, in which the defendant was sentenced to 16 years in the Illinois Department of Corrections, the court asked the defendant, '[W]as that also a three-year term of parole or ["]mandatory supervised release["] as they now refer to it?' [Citation to record.] This question clearly demonstrates the knowledge that the defendant had regarding his MSR term and how the court previously went through admonishing the defendant about his MSR rights. The defendant had to know about the MSR term in order to answer the court's question [by] repl[ying,] '[Y]es.' [Citation to record.] Furthermore, after the defendant's response[,] the court specifically stated, 'So[,] same class here.' [Citation to record.]"

On May 8, 2009, the State filed with us a motion to remand the case for the limited purpose of holding an evidentiary hearing pursuant to Illinois Supreme Court Rule 329 (210 Ill. 2d R. 329) to resolve the question of whether the transcript of the guilty-plea hearing was inaccurate as the trial court maintained. On May 13, 2009,

- 11 -

we granted the motion, ordering that notice of the trial court's decision be given to us on or before June 3, 2009.

On June 1, 2009, on remand, the trial court held the hearing pursuant to Rule 329. Judge Scott D. Drazewski presided, the same judge who had presided over the guilty-plea hearing. The public defender of McLean County, Amy Davis, appeared on behalf of defendant, who also was personally present. She told the court that defendant wished to testify in the hearing but that he objected to her representing him.

The trial court responded:

"THE COURT: Okay. Let me address that in a moment. Let me, before we get to his testimony, indicate that the [c]ourt is filing an affidavit that I have prepared, and there is also a stipulation which has been entered into by Miss Foster and Miss Davis that will also form a basis of the record in this case, and let me have the [c]lerk then distribute to counsel along with Mr. Merritt a copy of the stipulation and/or the affidavit. Is there any additional evidence[,] before we proceed with any evidence of Mr. Merritt[,] that the State wishes to submit?

MS. FOSTER: No, Your Honor. The stipulation is all the State wishes to submit."

The affidavit and stipulation are in the record. Judge Drazewski signed the affidavit on June 1, 2009. Therein, he avers that although he made no personal notes at the guilty-plea hearing on June 3, 2005, and although the official court reporter,

Therese Cwick, certified the transcript of that hearing as true and accurate, he has personal knowledge that the following sentence in the transcript is an inaccurate account of what he told defendant on that occasion: " 'Were you sentenced to the Department of Corrections, and so there's no stone unturned here, which is a mandatory sentence, no matter what happens here, it will involve a sentence to the Department of Corrections that would be for a term of three years.' " According to his affidavit, Judge Drazewski actually told defendant: " 'Were you sentenced to the Department of Corrections, and so there's no stone unturned here, which is a mandatory sentence, no matter what happens here, it would include a mandatory supervised release term of three years.' " Judge Drazewski says he "attempted to resolve the error in the transcript directly with the court reporter" but that he "was unsuccessful." He adds that in over 13 years as a trial judge, he never, until now, has ordered the correction of a transcript.

In their stipulation, filed on June 1, 2009, Foster and Davis say they were present at the guilty-plea hearing on June 3, 2005, and that the trial court admonished defendant that part of the penalty for the Class X felony of home invasion was mandatory supervised release for three years. They stipulate that the transcript "is in error in regard[] to the phrase 'a sentence to the Department of Corrections that would be for a term of three years.' " They agree that the transcript "should be corrected to properly reflect that [d]efendant was admonished regarding the term of mandatory supervised release for the Class X [felony of] [h]ome [i]nvasion."

After providing a copy of the affidavit and stipulation to counsel and defendant, the trial court told defendant he would have the opportunity to testify under oath and that his testimony would be part of the record that the appellate court would

- 13 -

consider. The court told him that because its decision was due by June 3, 2009, it would proceed with the hearing and consider his testimony even though he might prefer to have the office of the State Appellate Defender, rather than the public defender, represent him in the hearing.

Defendant took the stand, and the public defender performed the direct examination. Defendant testified he did not recall the trial court telling him, in the guilty-plea hearing on June 3, 2005, that he would have to serve three years of mandatory supervised release in addition to the prison term he received for home invasion. The public defender asked him:

"Q. And what is your recollection ***, if you have one, of what [the court] told you with regard to the mandatory supervised release term?

A. What the transcripts [sic] say.

Q. Okay. In other words, that he didn't advise you as to the mandatory supervised release, is that correct?

A. Correct. He did on a lower charge of the domestic [battery] but not as far as the Class X [felony]."

The trial court adhered to its finding that the transcript of the guilty-plea hearing was in error, as set forth in the order summarily dismissing defendant's postconviction petition.

## II. ANALYSIS

### A. Amending the Transcript of the Guilty-Plea Hearing

#### 1. Standard of Review

- 14 -

"Nunc pro tunc" is Latin meaning "now for then" (Black's Law Dictionary 1100 (8th ed. 2004)), and a "nunc pro tunc amendment" is an amendment that has retroactive effect.  Black's Law Dictionary 89 (8th ed. 2004)).  The trial court amended the transcript of the guilty-plea hearing nunc pro tunc.  Illinois Supreme Court Rule 329 (210 Ill. 2d R. 329) contemplates such amendments of the record, but "[t]he power to make a retroactive (nunc pro tunc) order should be exercised cautiously and as justice requires to speak what has been done, not to create" (60 C.J.S. Motions & Orders §51, at 58 (2002)).  We decide de novo "[w]hether an order satisfies the legal criteria for a nunc pro tunc order."  In re Aaron R., 387 Ill. App. 3d 1130, 1139, 902 N.E.2d 171, 178 (2009).

## 2. The Trial Judge's Affidavit

The law does not allow the contradiction of the record with an affidavit from outside the record, even an affidavit by the trial judge.  People v. Wear, 371 Ill. App. 3d 517, 526, 867 N.E.2d 1027, 1035 (2007), aff'd, 229 Ill. 2d 545, 893 N.E.2d 631 (2008).  One may use an affidavit from outside the record to supply an omission in the record but not to contradict the record.  Wear, 371 Ill. App. 3d at 524-25, 867 N.E.2d at 1034-35.  One may contradict the record only with "'"some note or memorandum from the record or quasi records of the court, or by the judge's minutes, or by the papers in file in the cause."'"  Wear, 371 Ill. App. 3d at 526, 867 N.E.2d at 1035, quoting Hartgraves v. Don Cartage Co., 63 Ill. 2d 425, 428, 348 N.E.2d 457, 458 (1976), quoting Pinkstaff v. Pennsylvania R.R. Co., 20 Ill. 2d 193, 202, 170 N.E.2d 139, 144 (1960).  Further, this record or quasi record must be "'definite and precise evidence'" that the record should be changed as proposed.  Wear, 371 Ill. App. 3d at 525, 867 N.E.2d at 1035, quoting Beck v. Stepp, 144 Ill. 2d 232, 239, 579 N.E.2d 824, 827 (1991).  We agree

- 15 -

with the State's concession that Judge Drazewski's affidavit is ineffectual to contradict the transcript of the guilty-plea hearing.

### 3. The Stipulation

The State argues that "a 'nonsensical' statement is properly corrected by stipulation under Supreme Court Rule 329" (210 Ill. 2d R. 329). We agree. Rule 329 says: "Material omissions or inaccuracies *** may be corrected by stipulation of the parties ***." 210 Ill. 2d R. 329.

Under a long-standing principle of the common law, however--a principle which, presumably, Rule 329 incorporates, absent any language to the contrary--a court need not accept a stipulation that is unreasonable. Rules of statutory construction apply to the interpretation of supreme court rules. People v. Roberts, 214 Ill. 2d 106, 116, 824 N.E.2d 250, 256 (2005). "It is a general rule[,] in the construction of statutes, that they are not to be presumed to alter the common law further than they expressly declare. Statutes are to be construed in reference to the principles of the common law; and it is not to be presumed[] that the legislature intends to make any innovation upon the common law further than the case ab[s]olutely requires." Mackin v. Haven, 187 Ill. 480, 493, 58 N.E. 448, 452 (1900). Illinois courts have long held that courts may decline to enforce unreasonable stipulations. People ex rel. Reinhart v. Herrin, 284 Ill. 368, 372, 120 N.E. 274, 275 (1918); Dawdy v. Sample, 178 Ill. App. 3d 118, 127, 532 N.E.2d 1128, 1135 (1989). Nothing in Rule 329 appears to disturb that holding.

We agree with defendant that the stipulation of June 1, 2009, is unreasonable and, therefore, unenforceable. Defendant's whole purpose on remand was to maintain the presumption that the transcript of the guilty-plea hearing was correct.

By signing a stipulation that the transcript was incorrect and should be amended as the trial court proposed, defense counsel defeated defendant's whole purpose in attending the hearing. Defense counsel did not have to enter into the stipulation. Strategically, it made no sense to enter into the stipulation only to present testimony by defendant contradicting the stipulation. Without making any factual representation whatsoever to the court, defense counsel could have insisted that the proposed amendment of the transcript be supported by the record or by a quasi record, as case law required. Or, if she believed that defendant's position was frivolous, she could have moved to withdraw.

Ultimately, the stipulation has caused no prejudice to defendant, for, as we will explain, Whitfield is inapplicable to this case--and Whitfield would be inapplicable even if the transcript of the guilty-plea hearing were amended as the trial court proposed and as counsel stipulated. But it does not follow that the stipulation was reasonable. We decline to enforce the stipulation. The transcript of the guilty-plea hearing shall stand unaltered. Having established the contents of the record, we turn to defendant's main argument.

B. Due Process

In Whitfield, 217 Ill. 2d at 179, 840 N.E.2d at 661, the prosecutor and trial court promised the defendant that if he pleaded guilty to first-degree murder and armed robbery, he would receive 25 years' imprisonment for the former offense and a concurrent term of 6 years' imprisonment for the latter offense. He pleaded guilty in reliance on that promise, and the court imposed the agreed-upon prison terms. Whitfield, 217 Ill. 2d at 179, 840 N.E.2d at 661. In the plea hearing, no one told him about mandatory supervised release. Whitfield, 217 Ill. 2d at 180, 840 N.E.2d at 661.

After he began serving his sentences, he learned that section 5-8-1(d)(1) of the Code (730 ILCS 5/5-8-1(d)(1) (West 1998)) automatically added 3 years of mandatory supervised release to his 25-year term of imprisonment. Whitfield, 217 Ill. 2d at 180, 840 N.E.2d at 661. He filed a postconviction petition alleging that the addition of mandatory supervised release deprived him of the benefit of his bargain and violated due process. Whitfield, 217 Ill. 2d at 182, 840 N.E.2d at 662. The supreme court held:

> "[T]here is no substantial compliance with Rule 402[,] and due process is violated[,] when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that a mandatory supervised release term will be added to that sentence. In these circumstances, addition of the MSR term to the agreed-upon sentence violates due process because the sentence imposed is more onerous than the one [the] defendant agreed to at the time of the plea hearing. Under these circumstances, the addition of the MSR constitutes an unfair breach of the plea agreement." Whitfield, 217 Ill. 2d at 195, 840 N.E.2d at 669.

The remedy was to modify the defendant's sentence to a term of 22 years' imprisonment followed by 3 years of mandatory supervised release. That way, his sentence would not be more onerous than the agreed-upon sentence of 25 years' imprisonment. Whitfield, 217 Ill. 2d at 205, 840 N.E.2d at 675.

As defendant acknowledges in his brief, we have held Whitfield to be

inapplicable to cases such as the present one, in which the plea agreement capped the sentence at so many years' imprisonment and the trial court imposed a prison term shorter than the cap--even though, with the addition of mandatory supervised release, the duration of the sentence might exceed the agreed-upon maximum years of imprisonment. People v. Jarrett, 372 Ill. App. 3d 344, 351, 867 N.E.2d 1173, 1180 (2007), appeal denied, 225 Ill. 2d 653, 875 N.E.2d 1118 (2007).

In Jarrett, 372 Ill. App. 3d at 345, 867 N.E.2d at 1174-75, the defendant agreed to plead guilty to one count, and, in return, the State agreed to the dismissal of the remaining counts and to a cap of the sentence at 10 years' imprisonment. The trial court sentenced the defendant to 8 years' imprisonment followed by 3 years of mandatory supervised release--a sentence having a potential duration of 11 years. Jarrett, 372 Ill. App. 3d at 345, 867 N.E.2d at 1175. (As we explained, the Prisoner Review Board had discretion to release a prisoner from mandatory supervised release before the term of mandatory supervised release had expired. Jarrett, 372 Ill. App. 3d at 352, 867 N.E.2d at 1180, citing 730 ILCS 5/3-3-8(a) (West 2004).) Citing Whitfield, the defendant claimed he had received a sentence more onerous than that to which he and the State had agreed. Jarrett, 372 Ill. App. 3d at 348-49, 867 N.E.2d at 1177. Observing that "[y]ears of [mandatory supervised release] and years in prison [were] not interchangeable" (Jarrett, 372 Ill. App. 3d at 351, 867 N.E.2d at 1179), we held Whitfield to be inapplicable (Jarrett, 372 Ill. App. 3d at 351, 867 N.E.2d at 1180).

Defendant argues that we should overrule Jarrett and follow the decision of the Second District in People v. Gulley, 383 Ill. App. 3d 727, 891 N.E.2d 441 (2008), appeal denied, 229 Ill. 2d 640, 897 N.E.2d 258 (2008). Gulley, however, would afford

- 19 -

no basis for overruling Jarrett, because the two decisions do not conflict. In Gulley, 383 Ill. App. 3d at 728, 891 N.E.2d at 443, the plea agreement capped the sentence at 30 years' imprisonment. The court sentenced the defendant to the maximum prison term allowable under the plea agreement, 30 years, and no one told him he also would have to serve 3 years of mandatory supervised release. Gulley, 383 Ill. App. 3d at 728, 891 N.E.2d at 443.

The Second District said:

"We reject the State's argument that Whitfield does not apply to this case because Whitfield involved a 'fully negotiated' plea, whereas defendant here negotiated only a sentencing cap. Whatever the distinction between a fully negotiated plea and a sentencing cap, it has no relevance here, where the sentencing cap for which defendant bargained was the very term that was violated. Defendant negotiated a cap of 30 years' imprisonment, and the court imposed a 30-year sentence. Indeed, the State acknowledges that 'the trial court imposed a 30-year term for armed robbery, the maximum allowed under the agreement.' The *** term [of mandatory supervised release] therefore effectively extended the sentence beyond the negotiated maximum just as it would if the prison term had been specifically negotiated. Like the defendant in Whitfield, defendant here did not receive the benefit of his plea

- 20 -

bargain." Gulley, 383 Ill. App. 3d at 733, 891 N.E.2d at 447.

In Gulley, the defendant received a more onerous sentence than that for which he had bargained. The parties had agreed to a maximum sentence of 30 years' imprisonment, and any additional punishment--of any kind--over and above 30 years' imprisonment necessarily would exceed the agreed-upon maximum. Thirty years' imprisonment plus three years of mandatory supervised release is undeniably more onerous than thirty years' imprisonment. Cf. Whitfield, 217 Ill. 2d at 193, 840 N.E.2d at 668 ("In situations where a defendant has entered an open plea and the trial court has admonished the defendant regarding the maximum sentence to which he would be exposed by his plea, the failure to admonish a defendant concerning the MSR is not a constitutional violation, as long as the sentence plus the term of MSR is less than the maximum sentence which defendant was told he could receive"). In the present case, by contrast--and in Jarrett--the trial court did not impose the agreed-upon maximum term of imprisonment. The parties agreed upon a cap of 25 years' imprisonment, and the trial court sentenced defendant to 23 years' imprisonment. Statutory law added a three-year term of mandatory supervised release. It makes no sense to assert that 23 years' imprisonment plus 3 years of mandatory supervised release is a more onerous punishment than 25 years' imprisonment, for the assertion attempts to compare apples to oranges. The units being compared are different. As we observed in Jarrett, 372 Ill. App. 3d at 351, 867 N.E.2d at 1179, a year of mandatory supervised release is not interchangeable with a year of imprisonment; they are two significantly different punishments.

Thus, we adhere to Jarrett, which, as defendant concedes, would lead to

- 21 -

the rejection of his due-process theory.  Because <u>Whitfield</u> is inapplicable on the facts of this case, we find, in our <u>de</u> <u>novo</u> review, that the summary dismissal of defendant's postconviction petition is correct.  See <u>People v. Holt</u>, 372 Ill. App. 3d 650, 652, 867 N.E.2d 1192, 1194 (2007).

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.  We award the State $50 in costs against defendant.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.