2020 IL App (4th) 180773

NO. 4-18-0773

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 22, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| JOHN A. POPE, | ) | No. 17CF12 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Diane Lagoski, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        In January 2017, the State charged defendant, John A. Pope, with seven counts of

predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)).

¶ 2        In December 2017, the State charged defendant with two counts of indecent

solicitation of a child (*id.* § 11-6(a)), three counts of aggravated criminal sexual abuse (*id.* § 11-

1.60(b)), and two additional counts of predatory criminal sexual assault of a child (*id.* § 11-

1.40(a)(1)). The juvenile victims were E.E.P. (11 years old at the time of the alleged offense),

M.E.P. (12 years old), and E.M.P (14 years old).

¶ 3        In April 2018, at defendant's jury trial, the three juvenile victims testified as State's

witnesses by videoconferencing from chambers outside the presence of defendant and the jury.

The jury ultimately found defendant guilty of four counts of predatory criminal sexual assault of a

child (E.E.P.), guilty of aggravated criminal sexual abuse (E.E.P.), guilty of indecent solicitation

of a child (M.E.P.), guilty of aggravated criminal sexual abuse (M.E.P.), guilty of predatory criminal sexual assault of a child (M.E.P.), guilty of indecent solicitation of a child (E.M.P.), guilty of aggravated criminal sexual abuse (E.M.P.), not guilty of one count of predatory criminal sexual assault of a child (E.E.P.), and not guilty of three counts of predatory criminal sexual assault of a child (M.E.P.). The trial court later sentenced defendant to two consecutive natural life prison terms for predatory criminal sexual assault of a child and concurrent terms for the remaining counts.

¶ 4        Defendant appeals, arguing (1) the trial court improperly applied the rape shield statute (725 ILCS 5/115-7 (West 2016)), (2) the trial court erred by allowing the juvenile victims to testify in chambers with multiple support persons present, (3) the trial court gave an improper deadline instruction to the jury, which caused them to return a rushed verdict, (4) he received ineffective assistance of counsel, and (5) he was prejudiced by "cumulative error." We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6                               A. The Charges

¶ 7        In January 2017, the State charged defendant with seven counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)).

¶ 8        In December 2017, the State charged defendant with two counts of indecent solicitation of a child (*id.* § 11-6(a)), three counts of aggravated criminal sexual abuse (*id.* § 11-1.60(b)), and two additional counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)).

¶ 9                                B. The Trial

¶ 10       Prior to defendant's trial, defendant filed a motion *in limine* in which he argued that

section 115-7 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7 (West 2016)), commonly known as the rape shield statute, should not prevent him from presenting evidence of the victims' prior sexual assaults. The trial court denied the motion.

¶ 11    In April 2018, defendant's jury trial commenced. In his opening statement, defense counsel stated the evidence would show that a witness, Leonard Jason Bullock, had a prior sex offense. Prior to Bullock's testimony, the State notified the trial court that it had discovered Bullock's prior sex offense was a misdemeanor conviction committed more than 10 years ago. Defense counsel noted that both he and the State were operating under the misunderstanding that the offense could be used to impeach Bullock. Counsel feared that he told the jury he would "demonstrate this guy is a sex offender. To cut me off now looks like I told the jury something untrue." The court noted that this was a "mutual mistake made by counsel on both sides" but decided that, because the offense was easily explainable, the court would allow defense counsel to inquire about the offense. During cross-examination, Bullock confirmed that he was convicted of a misdemeanor sex offense but was no longer required to register as a sex offender.

¶ 12    The State introduced the testimony of multiple police officers and personnel from the Illinois State Police forensic lab. The three juvenile victims also testified but did so by videoconferencing from chambers outside the presence of defendant and the jury. The trial court allowed the presence of support persons while each victim testified but instructed the parties prior to the victims testifying, as follows: "You need to make sure that your support people are clear. They are not to shake their head, they are not to nod. I would prefer no expression from them one way or the other." The court further stated that the support persons should give "no indication as to how those little girls should answer questions."

¶ 13    On Monday April 16, 2018, the State rested its case. On Tuesday, following the

testimony of several defense witnesses, defense counsel stated outside the presence of the jury that he thought "we'll get done with evidence today," and the trial court replied, "Marvelous." That afternoon, defendant chose to testify in his defense. After defense counsel completed his direct examination of defendant, the trial court informed the jurors that it would dismiss them for the day. The court further informed the jurors that they would begin "a little later" the next morning because the court had committed to performing a wedding "a long, long time ago." The court also told the jurors that it "told counsel—we have to—I think [defense counsel] and I both need to be out of town Thursday so we're gonna [*sic*] finish tomorrow so do not plan anything tomorrow night. I'm hoping this will move along fairly quickly but we'll go as late as is necessary tomorrow night."

¶ 14        The next morning, the trial court resumed proceedings, stating:

"THE COURT: Ladies and gentleman, I appreciate your patience in letting me do this wedding this morning. I committed to this a long time ago and I know this young couple appreciates that I didn't make them wait. At that point, I had no idea I was gonna [*sic*] be in jury trial in this matter.

At this point, we're going to resume [defendant's] testimony and then we will just keep going. As far as I'm concerned, we are going to rock and roll today so that we can get this done."

¶ 15        Defendant concluded his case, and the State offered rebuttal testimony. Following closing arguments, the jury deliberated for approximately 3 hours and 20 minutes before reaching a verdict. Ultimately, the jury found defendant guilty of 10 counts and not guilty of 4 counts, as detailed above.

¶ 16                        C. Posttrial Motion and Sentencing

¶ 17    In May 2018, defendant filed a motion for a new trial, and in October 2018, defendant filed an addendum to the motion. Defendant sought to supplement the record with two affidavits from individuals who attended the trial. Both affidavits asserted the trial court rushed the jury to a verdict. In support of that assertion, each affidavit referred to statements the trial court allegedly made to the jury; however, the alleged statements were not in the record except for the trial court's remark, "marvelous," which we discuss below.

¶ 18    At the hearing on the motion, the trial court disputed the contents of the affidavits. The court stated, "I can tell you with absolute certainty, not one word was uttered in front of the jury that was not in that record, not a word." The court said it remembered clearly having conversations with defense counsel "about where we needed to be and when we needed to be finished. None of that was ever communicated to the jury." And, in fact, the record shows the court's statement was correct.

¶ 19    Immediately following the hearing on the posttrial motion, the trial court sentenced defendant to two consecutive natural life prison terms for predatory criminal sexual assault of a child and concurrent terms for the remaining counts.

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    Defendant appeals, arguing (1) the trial court improperly applied the rape shield statute (*id.*), (2) the trial court erred by allowing the juvenile victims to testify in chambers with multiple support persons present, (3) the trial court gave an improper deadline instruction to the jury which caused them to return a rushed verdict, (4) he received ineffective assistance of counsel, and (5) he was prejudiced by "cumulative error." For the reasons that follow, we affirm.

¶ 23             A. The Trial Court Properly Applied Section 115-7 of the Code

- 5 -

¶ 24 First, defendant argues that the rape shield statute (*id.*) was improperly interpreted and applied by the trial court.

¶ 25                  1. *The Applicable Law*

¶ 26 The rape shield statute states as follows:

"In prosecutions for predatory criminal sexual assault of a child, \*\*\* [and] aggravated criminal sexual abuse, \*\*\* the prior sexual activity or the reputation of the alleged victim \*\*\* is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim \*\*\* with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim \*\*\* consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted." *Id.* § 115-7(a).

¶ 27 "[U]nder proper circumstances, evidence of a child witness's prior sexual conduct is admissible to rebut the inferences that flow from a display of unique sexual knowledge." *People v. Hill*, 289 Ill. App. 3d 859, 864, 683 N.E.2d 188, 192 (1997). "The rebuttal of inferences created by age-inappropriate sexual knowledge is not an open invitation to indiscriminately present prior episodes of sexual abuse. [Citation.] The prior sexual conduct must be sufficiently similar to defendant's alleged conduct to provide a relevant basis for its admission." *Id.* "[T]he prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered defendant's alleged conduct." *Id.* at 865.

¶ 28 The trial court has discretion to determine evidence is inadmissible pursuant to the rape shield statute, and a court's ruling will not be reversed absent an abuse of that discretion. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 60, 112 N.E.3d 657. A trial court abuses its discretion when its ruling is arbitrary "or when no reasonable person would take the view adopted by the trial

court." *Id.*

¶ 29                              2. *This Case*

¶ 30        In this case, defendant requested the trial court to allow evidence that all the alleged victims in this case were previous victims of sexual assault by a parental figure. The victims' ages in this case were 11, 12, and 14. The State informed the trial court prior to trial that it did not intend to argue that the victims had unique sexual knowledge they could have learned only from what allegedly happened with defendant.

¶ 31        The trial court noted that *Hill* required that the "prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered defendant's alleged conduct." *Hill*, 389 Ill. App. 3d at 865. The court concluded that "[t]he purported testimony of these girls, given their ages and the allegations in this case, do not create such a 'unique knowledge' that would allow for the admission of such evidence."

¶ 32        Defendant argues to this court that this evidence could be relevant as evidence of bias, prejudice, or motive. Defendant's argument is essentially that the victims were biased against defendant because defendant created restrictive rules in the home in which the children lived with defendant. Defendant asks in his brief, "What better way to exit [defendant's] home than to falsely accuse [d]efendant of sexual assault, when the child was aware that such allegations would most likely affect the change she sought?" However, nothing about the prior sexual assaults (which had nothing to do with defendant) made the victims biased against defendant. Instead, any bias that may have been present existed due to other problems the victims had in the home, and defendant was always free to bring forth relevant evidence related to the victims disliking him for his rules and disciplinary techniques.

¶ 33        Because (1) this evidence would not have been used to rebut an argument of

"unique knowledge" and (2) there is no relevant alternative use identified by defendant, the trial court did not abuse its discretion regarding the application of section 115-7 to this case.

¶ 34        B. The Trial Court Did Not Err by Allowing the Victims to Testify

in Chambers with Support Persons Present

¶ 35        Defendant next claims that the trial court erred by allowing the victims to testify by use of videoconferencing software in chambers and with multiple support persons present.

¶ 36                        1. *The Applicable Law*

¶ 37        Section 106B-5(a) of the Code states as follows:

"In a proceeding in the prosecution of an offense of criminal sexual assault, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual abuse, [or] aggravated criminal sexual abuse, *** a court may order that the testimony of a victim who is a child under the age of 18 years *** be taken outside the courtroom and shown in the courtroom by means of a closed circuit television if:

(1) the testimony is taken during the proceeding; and

(2) the judge determines that testimony by the child victim *** in the courtroom will result in the child *** suffering serious emotional distress ***." 725 ILCS 5/106B-5(a) (West 2016).

¶ 38        Section 106B-5(d)(5) allows "any person or persons whose presence, in the opinion of the court, contributes to the well-being of the child ***, including a person who has dealt with the child in a therapeutic setting concerning the abuse" to be in the room with the child when the child is testifying. *Id.* § 106B-5(d)(5). A defendant's confrontation clause rights are not violated when the defendant is allowed to cross-examine the witnesses testifying pursuant to section 106B-

5 (*id.* § 106B-5). *People v. Schmitt*, 204 Ill. App. 3d 820, 824-25, 562 N.E.2d 377, 382 (1990). An appellate court reviews a trial court's decision to permit closed circuit testimony for an abuse of discretion. See *id.* at 825.

¶ 39                                                  2. *This Case*

¶ 40          In this case, the trial court ruled prior to trial that the victims could testify in chambers pursuant to section 106B-5. The court also allowed support persons to be present during the victim's testimony but warned them to remain neutral and, in particular, avoid in any way indicating how the questions should be answered. Further, the court told the support persons that any warning signs that the children might be going into a dissociative state should be outside the camera's view.

¶ 41          Defendant complains that the victims were in some way being coached by the support persons in chambers with them or that the support persons in the room were doing something improper, but defendant does not in any way indicate what that might have been. Because this record contains nothing to suggest that the victims were being coached as they testified or that someone interfered with their testimony, we reject defendant's claim.

¶ 42          Although we reject defendant's claim, we think it appropriate to address a related constitutional concern. The United States Supreme Court stated in *Maryland v. Craig*, 497 U.S. 836, 851 (1990), that "use of the one-way closed circuit television procedure, where necessary to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause." The Illinois Supreme Court favorably cited *Craig* when it stated that, "[w]hile the confrontation clause represents a preference for face-to-face confrontation, that preference 'must occasionally give way to considerations of public policy and the necessities of the case.' [Citation.]" (Internal quotation marks omitted.) *People v. Cuadrado*, 214 Ill. 2d 79, 89,

824 N.E.2d 214, 220 (2005).

¶ 43    We acknowledge a historical preference in Illinois for face-to-face confrontation at trial. In *People v. Fitzpatrick*, 158 Ill. 2d 360, 365, 633 N.E.2d 685, 687 (1994), the Illinois Supreme Court determined that the Illinois Constitution explicitly required "face-to-face" confrontation, while the federal constitution merely contained the " 'right *** to be confronted' " (emphasis omitted) (*id.* at 367 (quoting U.S. Const., amend. VI)). Shortly after the supreme court's decision in *Fitzpatrick*, the Illinois General Assembly in 1994 proposed an amendment to delete the "face to face" language from the Illinois confrontation clause to conform with the language of the federal constitution. *People v. Dean*, 175 Ill. 2d 244, 254, 677 N.E.2d 947, 952 (1997). Following approval of the amendment, the legislature reenacted section 106B-1, thereby allowing "young victims of certain listed sexual crimes to testify by closed circuit television outside the presence of the defendant." *Id.* at 255.

¶ 44    Relying on *Craig* may be problematic. In *Craig*, Justice Scalia wrote a dissent joined by three of his colleagues, in which he stated that no policy interest should overcome a defendant's right to face his or her accusers in court. *Craig*, 497 U.S. at 861 (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.). Justice Scalia would later author *Crawford v. Washington*, 541 U.S. 36 (2004), in which the United States Supreme Court established a far more robust framework for protecting the right to confront one's accuser.

¶ 45    Professor Wayne LaFave echoed Justice Scalia's *Craig* misgivings and noted the apparent contradiction between *Crawford* and *Craig*, stating, "Some language in *Crawford* that endorses categorical rules rather than balancing tests is at odds with the Court's opinion in *Craig*. Nevertheless courts have continued to apply *Craig*, noting that the *Crawford* decision did not mention *Craig*, and that it addressed when confrontation is required, not what procedures

constitute confrontation." 6 Wayne R. LaFave, Criminal Procedure § 24.2(e) (4th ed. 2019). The tension between these cases is only exacerbated by the fact that, while *Crawford* does not mention *Craig*, it does mention cases that *Craig* relied upon, like *Ohio v. Roberts*, 448 U.S. 56 (1980), which was abrogated and rejected by *Crawford*. *Crawford*, 541 U.S. at 57-58.

¶ 46        This court has the same misgivings about limitations on the rights of defendants that Justice Scalia and Professor LaFave raised; however, we cannot ignore what Illinois case law indicates. Because the Illinois Supreme Court has recognized that *Craig* remains good law after *Crawford*, we are bound to follow it.

¶ 47        Under prevailing law, the trial court did not abuse its discretion by allowing the children to testify by use of a videoconferencing system, nor did the trial court err by allowing support persons to be present with the children while they testified.

¶ 48        C. The Trial Court Did Not Issue an Improper Deadline to the Jury

¶ 49        Defendant next argues that the trial court in some way rushed the jury to return a "hasty and ill-considered verdict." In making this argument, defendant relies upon affidavits produced by individuals who observed the courtroom proceedings, not upon the transcript of the proceedings.

¶ 50                                1. *The Applicable Law*

¶ 51        In determining whether a trial court's comments to the jury are proper, "the test is whether, upon examination of the totality of circumstances, the language used *actually interfered* with the jury's deliberations and coerced a guilty verdict." (Emphasis added.) *People v. Fields*, 285 Ill. App. 3d 1020, 1029, 675 N.E.2d 180, 186 (1996). Although the length of deliberations following a trial court's comments might be relevant to the question of coercion, informing a jury that it will be sequestered after a certain time is not necessarily coercive. *Id.*

¶ 52　　　　In determining whether affidavits may be used to supplement the trial court's record, this court has held that "[t]he law does not allow the contradiction of the record with an affidavit from outside the record, even an affidavit by the trial judge." *People v. Merritt*, 395 Ill. App. 3d 169, 178, 916 N.E.2d 631, 639 (2009).

¶ 53　　　　　　　　　　　　　　　　2. *This Case*

¶ 54　　　　As a preliminary matter, we note that, pursuant to our previous ruling in *Merritt*, we will not consider the affidavits proffered by defendant because they contradict the record. *Id.* That is, the affidavits purport to contain statements the trial court allegedly made in the presence of the jury, but these alleged statements do not appear in the transcript of proceedings. As the trial court noted, the record contains a complete transcript of the proceedings that took place within the presence of the jury. Thus, in resolving defendant's claim that the trial court in some way rushed the jury, we will utilize only the official record and disregard entirely the affidavits defendant presented to the trial court because we will not countenance any effort to contradict the official record.

¶ 55　　　　Defendant identifies the comments with which he takes issue as follows: (1) in response to defense counsel informing the trial court that he thought "we'll get done with evidence today," the court said, "Marvelous;" (2) "[a]nd I told counsel—we have to—I think [defense counsel] and I both need to be out of town Thursday so we're gonna [*sic*] finish tomorrow so do not plan anything tomorrow night. I'm hoping this will move along fairly quickly but we'll go as late as is necessary tomorrow night;" and (3) "[a]s far as I'm concerned we are going to rock and roll today so that we can get this done."

¶ 56　　　　Because the record reveals that the "marvelous" comment was not made in the presence of the jury, it cannot have influenced the jury.

¶ 57        The other statements were made in the presence of the jury, but they took place during the trial itself and not during deliberations. The standard is whether "the language used actually interfered with *the jury's deliberations* and coerced a guilty verdict." (Emphasis added.) *Fields*, 285 Ill. App. 3d at 1029. These comments are so far removed from jury deliberations that there is no evidence—and no inference can be drawn from the record—that the jury even remembered the comments. When the comments are as benign and remote as the ones at issue in this case, we conclude that the trial court's comments were not improper.

¶ 58        D. Defendant Did Not Receive Ineffective Assistance of Counsel

¶ 59        Next, defendant argues he received ineffective assistance of counsel because his counsel (1) failed to make an offer of proof regarding the victim's prior sexual assault, (2) failed to call certain witnesses identified by defendant, (3) failed to "make greater and more persuasive efforts to dissuade [defendant] from testifying," (4) failed to properly investigate Bullock's prior sex offense and therefore misstated the facts of that offense during his opening statement, and (5) called Minnie Pope (defendant's wife) as a defense witness. We disagree.

¶ 60                              1. *The Applicable Law*

¶ 61        All defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14, 123 N.E.3d 1285.

¶ 62        To establish deficient performance, a defendant must show his counsel's performance fell below an objective standard of reasonableness. *Id.* It is not sufficient for a defendant to show that counsel's representation was imperfect because the constitution guarantees

- 13 -

only a reasonably competent counsel. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Instead, a defendant must show his counsel's representation undermined the proper functioning of the adversarial process to such an extent that the defendant was denied a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686).

¶ 63     To show prejudice, a defendant must demonstrate "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 64                                          2. *This Case*

¶ 65     First, defendant claims his trial counsel failed to make an "offer of proof regarding prior sexual assaults by others committed against the juvenile witnesses." We note defense counsel did argue that he should be able to question the victims about their prior sexual assaults. It is unclear what information counsel could have included in an offer of proof beyond what was presented to the trial court, and defendant does not suggest to this court what this information would be. Based upon this record, it is impossible for this court to conclude that an offer of proof could have had any impact.

¶ 66     Second, defendant claims that trial counsel was ineffective because he failed to call certain witnesses at trial. Because the decision whether to call any particular witness is generally a matter of trial strategy, that decision usually cannot be the basis for a claim of ineffective assistance of counsel. *People v. Cooper*, 2013 IL App (1st) 113030, ¶ 63, 773 N.E.3d 789. Further,

defendant does not identify who these witnesses are or what their testimony would have been. Again, based upon this record, it would be impossible to conclude that these unknown witnesses could have had any impact on the outcome of the trial when we do not know who they are or what their testimony would have been.

¶ 67 Third, defendant claims that trial counsel was ineffective for failing to persuade defendant not to testify at trial. This contention is utterly without merit. It is axiomatic that, in our criminal justice system, the decision whether or not to testify lies solely with the defendant. *People v. Phillips*, 371 Ill. App. 3d 948, 951, 864 N.E.2d 823, 827 (2007). Prior to defendant's testifying in this case, the trial court asked (1) whether the choice was defendant's own, (2) whether defendant discussed his decision with counsel, and (3) whether he was satisfied with counsel's representation. Defendant answered all of these questions in the affirmative. We conclude that trial counsel cannot be ineffective for failing to "persuade" a defendant to give up one of his fundamental rights.

¶ 68 Fourth, defendant claims trial counsel was ineffective for (1) inadequately investigating Bullock's prior sex offense and (2) misstating the evidence surrounding that offense during opening statement. During his opening statement, defense counsel stated:

> "Jason Bullock is—should he testify, you're gonna hear that he, himself, is a sex offender ***. So Mr. Jason Bullock says the things he says not only from the point of view of a convicted sex offender himself but as somebody who could benefit greatly by the fact that [defendant's] reputation was harmed ***."

Ultimately, the trial court allowed questioning related to Bullock's sex offense, and Bullock did testify that he was convicted of a misdemeanor sex offense, although he was no longer required to register as a sex offender.

¶ 69    When it became clear after further investigation that Bullock's offense was less serious than either party originally thought, this discrepancy was never revealed to the jury. Instead, the jury was told they would hear the witness was a sex offender, and he testified as such on cross-examination. Because defense counsel in fact did not misstate the evidence the jury would hear, counsel could not have been ineffective in this instance.

¶ 70    Fifth, defendant claims that defense counsel was ineffective because he called Minnie Pope as a defense witness. As we explained above, because the decision of which witnesses to call is generally a question of trial strategy, that decision usually cannot be the basis for a claim of ineffective assistance of counsel. *Cooper*, 2013 IL App (1st) 113030, ¶ 63. Minnie Pope's testimony was helpful to the defense in that (1) she described how the victims were caught in her and defendant's bedroom without permission, (2) she observed the victims going into her drawers where she stored her sex toys, and (3) she did not believe the victims were telling the truth. It was not objectively unreasonable for counsel to call such a witness, even if the witness in hindsight was less helpful to the defense than defense counsel might have hoped.

¶ 71    We further note that defendant raised additional instances of ineffective assistance in his reply brief, including that defendant received ineffective assistance of counsel because counsel failed to (1) move for a psychological or psychiatric examination of the victims; (2) consult experts concerning issues of reactive attachment disorder, post-traumatic stress disorder, and the minor's likelihood of engaging in manipulation, fabrication, prevarication, and control; and (3) (a) obtain or review records from the Kansas foster system and (b) identify witnesses who could testify to the minors' prior psychological diagnoses and their history of neglect and abuse. However, issues or arguments that a party fails to raise in the party's initial brief cannot later be raised in a reply brief. Accordingly, we will not consider them. *People v.*

*Curry*, 2013 IL App (4th) 120724, ¶ 89, 990 N.E.2d 1269.

¶ 72                                    E. Defendant's Claim of Cumulative Error

¶ 73           Defendant's final argument consists of a laundry list of complaints, unsupported by citations of authority, which he claims amounts to "cumulative error" requiring reversal. Defendant's claims of error include the following: (1) defendant objected to the State's asking a victim how Minnie Pope's not believing her made her feel as irrelevant, but the trial court never ruled on this objection; (2) the court sustained objections related to bolstering the victims' credibility; (3) defense counsel misstated Bullock's sex offender status in opening statements; (4) the court erred by denying defendant's motion *in limine* to bar Bullock from testifying about certain irrelevant and prejudicial matters; (5) the court overruled an objection regarding Bullock stating that he would not lie about someone being a sex offender due to his being convicted of a sex offense in the past; (6) the court erred by allowing the State to question a witness about her son's prior felony conviction; (7) the court erred by sustaining an objection regarding whether defendant ever used "sexually latent" language in a disciplinary context; (8) the jury was improperly instructed; (9) defendant's motion for a directed verdict at the close of the State's case-in-chief should have been granted; and (10) the State's "Occam's Razor" and "other remarks" in closing argument were improper.

¶ 74                                    1. *Failure to Comply with Supreme Court Rules*

¶ 75           Unfortunately, these claims are impossible to review due to appellate counsel's failure to abide by Illinois Supreme Court Rule 341 (eff. May 25, 2018). " 'A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research.' [Citation.]" *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205, 69 N.E.3d 328. Accordingly,

- 17 -

Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires that an appellant's brief contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) says that the statement of facts "shall contain the facts necessary to an understanding of the case *** and with appropriate reference to the pages of the record on appeal." The failure to cite any authority or to articulate an argument will result in forfeiture of that argument on appeal. See, *e.g.*, *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 16, 13 N.E.3d 802.

¶ 76        Appellate counsel submitted a statement of facts approximately one-half page in length, containing only one citation of the record. The report of proceedings and the common-law record combined total 1931 pages, making a proper statement of facts all the more necessary.

¶ 77        Appellate counsel's argument lacks appropriate citation to authority. The citations that counsel does provide fall short of the standard prescribed in Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). The only claim substantiated with *both* a citation to the record and a citation to some authority is the one alleging the State made an improper closing argument. We will address this argument below. However, because of counsel's failure to cite the record or the relevant authority for the remaining contentions, we conclude that defendant has forfeited every other argument in the section. *Oglesby*, 2016 IL App (1st) 141477, ¶ 205.

¶ 78                2. *Defendant's Claim of Improper Closing Argument*

¶ 79        Defendant claims that the State made an improper closing argument because of the State's reference to "Occam's Razor." Although defendant cites *People v. Wheeler*, 226 Ill. 2d 92, 121, 871 N.E.2d 728, 744 (2007), in support of his claim that the standard of review is *de novo*, this is not settled law. See *People v. Ali*, 2019 IL App (2d) 161016, ¶ 13, 137 N.E.3d 827 (noting

- 18 -

that, while *Wheeler* utilizes *de novo* review, it cites approvingly and relies upon *People v. Blue*, 189 Ill. 2d 99, 128, 724 N.E.2d 920, 935 (2000), which applied an abuse of discretion standard to the same issue). However, because we conclude in this case that the State's closing argument was entirely appropriate, we need not address which standard of review applies; defendant's argument fails under any standard of review.

¶ 80　　　　　Prosecutors are afforded wide latitude during closing argument and may properly comment on the evidence presented and reasonable inferences drawn from that evidence, respond to comments made by defense counsel that invite a response, and comment on the credibility of a witness. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 25, 986 N.E.2d 1249. To determine whether a prosecutor's comment in closing argument was improper, a reviewing court must view such comment in its proper context. *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 47, 972 N.E.2d 1272.

¶ 81　　　　　In this case, we conclude that the State did not make an improper argument. The State simply argued to the jury that "Occam's Razor" states that "the most likely explanation is the one that makes the fewest assumptions." The State then argued that the defendant's explanation required the jury to assume "everyone [else] is lying." "Occam's Razor" is not an uncommon term, and when one looks at what was actually said, it is a fairly generic and common argument related to the credibility of defendant's version of events. Such arguments are made every day in courtrooms around the country, and that argument was perfectly acceptable.

¶ 82　　　　　　　　　　　　　　　III. CONCLUSION

¶ 83　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 84　　　　　Affirmed.

**No. 4-18-0773**

| | |
|---|---|
| **Cite as:** | *People v. Pope*, 2020 IL App (4th) 180773 |
| **Decision Under Review:** | Appeal from the Circuit Court of Pike County, No. 17-CF-12; the Hon. Diane Lagoski, Judge, presiding. |
| **Attorneys for Appellant:** | Gary W. Wangler, of Belleville, for appellant. |
| **Attorneys for Appellee:** | Zachary P. Boren, State's Attorney, of Pittsfield (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |