# Illinois Official Reports

## Appellate Court

---

**People v. Pingelton, 2021 IL App (4th) 180751**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN PINGELTON, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-18-0751 |
| Filed<br>Rehearing denied | August 3, 2021<br>August 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 05-CF-1295; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Edward J. Wittrig, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Daniel K. Wright, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Benjamin M. Sardinas, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht concurred in the judgment and opinion.
Justice Harris specially concurred, with opinion.

## OPINION

¶ 1    Following a November 2006 jury trial, defendant, John Pingelton, was convicted of two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)). The trial court later sentenced him to 10 years in prison on each count, to be served consecutively.

¶ 2    In December 2015, defendant *pro se* filed a postconviction petition alleging, in pertinent part, that he received ineffective assistance of both trial and appellate counsel because his counsel allowed physicians to provide improper expert opinions. Later that month, the trial court advanced the petition to the second stage and appointed counsel to represent defendant.

¶ 3    In March 2016, the State filed a motion to dismiss defendant's petition.

¶ 4    In January 2018, postconviction counsel filed a motion to withdraw as counsel that included (1) a memorandum addressing defendant's claims and (2) a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 5    On May 8, 2018, the trial court made a docket entry indicating that the case was set for a status hearing the following day. At that hearing, the State and postconviction counsel appeared personally, and defendant appeared via telephone. The court heard arguments from the State, postconviction counsel, and defendant and then took the matter under advisement. The court later wrote an order in which it granted (1) postconviction counsel's motion to withdraw and (2) the State's motion to dismiss.

¶ 6    Defendant appeals, arguing that (1) the trial court erred by dismissing his petition without providing him sufficient notice and opportunity to be heard and (2) postconviction counsel provided unreasonable assistance because he failed to advance the potentially meritorious claim that defendant received ineffective assistance of trial and appellate counsel when trial counsel failed to object to unqualified doctors providing improper expert opinions and appellate counsel failed to raise that argument on direct appeal. We affirm.

¶ 7                                    I. BACKGROUND
¶ 8                                    A. The Charges
¶ 9    In October 2005, the State charged defendant with two counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2004)), alleging that defendant used force to commit acts of sexual penetration, namely, placing his penis in the vagina of K.S. and placing his finger in the vagina of A.H.

¶ 10                                   B. The Trial
¶ 11    Because the majority of the evidence presented at trial is not relevant to this appeal, we focus primarily on the expert testimony at issue. We previously set forth a thorough recitation of the trial testimony in our order affirming defendant's conviction on direct appeal. *People v.*

*Pingelton*, 377 Ill. App. 3d 1163 (2007) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12        Cheryl Dowell, defendant's former spouse, testified that on July 7, 2005, she, defendant, and their children were at defendant's friend's residence. K.S. and A.H., two teenaged girls, were also present. K.S. and A.H. lived in a foster home and had previously babysat for defendant and Dowell.

¶ 13        K.S. testified that she and A.H. decided on July 7, 2005, to run away from their foster home. They met with defendant and Dowell at defendant's friend's house before going to defendant's house. At defendant's house, defendant sexually assaulted K.S. and A.H. After the assault, defendant kept trying to tell K.S. and A.H. that nothing happened.

¶ 14        Initially, K.S. and A.H. did not tell anyone about the attack. K.S. testified that defendant's attack caused her to bleed vaginally and she got a medical examination about two weeks after the attack. A.H. testified she received a medical examination about 10 days after defendant digitally penetrated her.

¶ 15        Dr. Dennis Adams testified that he was an emergency medicine physician and had examined approximately 20 victims of sexual assault. Adams stated he conducted a physical examination of A.H. and the pelvic exam portion was "unremarkable." However, Adams explained that the lack of trauma was not inconsistent with A.H.'s allegations because "in most cases [he had handled,] there was not objective evidence of trauma."

¶ 16        On cross-examination, Adams acknowledged that in his experience, some cases of sexual assault show physical trauma. Adams also acknowledged he was not a gynecologist and did not use a colposcope (essentially, a specialized magnifying device) to look for trauma. He testified that he had not been trained in the use of a colposcope and had never used one before.

¶ 17        Dr. Robert Silwa testified that he was an emergency medicine physician and had conducted approximately 100 sexual assault examinations. Silwa examined K.S., did not find evidence of trauma, and stated that, even if K.S. had told him she experienced bleeding at the time of the assault, Silwa would not have expected to find evidence of trauma because of the length of time between the attack and examination.

¶ 18        On cross-examination, Silwa acknowledged he was not a gynecologist and did not use a colposcope. Silwa explained that a colposcope (1) is a magnifying tool used to examine the cervical area in great detail for signs of subtle trauma not visible to the naked eye and (2) is more commonly used to examine children. Silwa testified that he had never used a colposcope. Silwa agreed that he could not say one way or another whether K.S. was sexually assaulted.

¶ 19        The jury convicted defendant of both counts of criminal sexual assault. The trial court later sentenced him to 10 years in prison on each count, to be served consecutively.

¶ 20                                    C. Defendant's Postconviction Petition

¶ 21        In December 2015, defendant *pro se* filed a postconviction petition alleging, in pertinent part, that he received ineffective assistance of both trial and appellate counsel because (1) his trial counsel failed to prevent two State's witnesses—the physicians—from providing improper expert opinions and (2) his appellate counsel failed to raise that issue on direct appeal. Later that month, the trial court advanced the petition to the second stage and appointed counsel to represent defendant.

¶ 22    In March 2016, the State filed a motion to dismiss defendant's petition, arguing that it contained claims that were waived, conclusory, lacking in merit, and refuted by the record.

¶ 23    In January 2018, postconviction counsel filed a motion to withdraw as counsel that included (1) a memorandum addressing defendant's claims and (2) a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 24    On May 8, 2018, the trial court made a docket entry indicating that the case was set for a status hearing the following day.

¶ 25    At that hearing, the State and postconviction counsel appeared personally, and defendant appeared via telephone. The trial court first heard argument from the State on its motion to dismiss, during which the State said it would "adopt and incorporate all of the arguments that are contained within [counsel's motion to withdraw]." The State argued further, in pertinent part, that (1) trial counsel was not ineffective because he was able to elicit favorable testimony from the State's experts and (2) the charging instrument was not defective.

¶ 26    Defendant then personally stated to the trial court that his postconviction counsel should be allowed to withdraw and that defendant should be allowed to proceed *pro se*. In response to defendant's remarks, postconviction counsel said that he examined defendant's claims, concluded they were meritless, and requested that he be allowed to withdraw. The court took the matter under advisement.

¶ 27    The trial court later entered a written order in which it granted (1) postconviction counsel's motion to withdraw and (2) the State's motion to dismiss. In doing so, the trial court referred to the motion to withdraw very briefly but wrote at length about why it granted the State's motion to dismiss. The court noted that (1) none "of the allegations made by the Defendant-Petitioner show unreasonable assistance by his trial counsel, nor can the Court find that he was prejudiced by these purported failures" and (2) "the Defendant's claim that he was convicted of [*sic*] a defective charging instrument is also not supported by the record." The court then concluded by writing, "As Defendant has failed to make a substantial showing of any constitutional violation in his Petition, the Court allows the State's Motion to Dismiss Post-Conviction Petition."

¶ 28    This appeal followed.

¶ 29                                  II. ANALYSIS

¶ 30    Defendant appeals, arguing that (1) the trial court erred by dismissing his petition without providing him sufficient notice and opportunity to be heard and (2) postconviction counsel provided unreasonable assistance because he failed to advance the potentially meritorious claim that defendant received ineffective assistance of trial and appellate counsel when trial counsel failed to object to unqualified doctors providing improper expert opinions and appellate counsel failed to raise that argument on direct appeal. We affirm.

¶ 31                    A. Defendant's Lack of Notice and Opportunity
                              to Be Heard Was Harmless Error

¶ 32    Defendant first argues that the trial court erred because it failed to provide him sufficient (1) notice of the hearing and (2) opportunity to be heard at the hearing. We agree that the trial court erred by not providing defendant sufficient notice and opportunity to be heard. However,

this error was harmless because, for the reasons we explain later, defendant failed to state the gist of a constitutional claim. See *infra* ¶¶ 67-71.

¶ 33    Because of the way that the trial court conducted the hearing at issue, the only party who ever discussed the State's motion to dismiss was the State itself. The trial court (1) heard argument from the State on the State's motion to dismiss, (2) heard argument from defendant and postconviction counsel on the motion to withdraw, and (3) ordered dismissal based upon the motion to dismiss alone without ever hearing argument from defendant on that motion.

¶ 34    Because nearly two years had passed since the State's motion to dismiss was originally filed in March 2016, defendant had no reason to suspect the motion would be argued at this hearing. Further, defendant was then represented by postconviction counsel, thereby limiting his ability to argue *pro se* until his counsel was later allowed to withdraw. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 28, 100 N.E.3d 177. In addition, the State's motion was served on postconviction counsel, not defendant, and the record contains no indication defendant personally received the motion. Under these circumstances, defendant could not reasonably be expected to argue against the motion to dismiss, when, at the time the State made its argument, (1) defendant was still represented by counsel and (2) counsel would not be allowed to withdraw until later. Accordingly, it was error, albeit harmless under the circumstances of this case, for the trial court to grant the motion without hearing argument from defendant.

¶ 35                    B. Trial Counsel Provided Effective Assistance

¶ 36    Defendant argues that his postconviction counsel should not have been allowed to withdraw because defendant made the potentially meritorious claim that he received ineffective assistance from both his trial and appellate counsel regarding trial counsel's permitting improper expert testimony. We disagree because trial counsel did not err when he did not object to the expert testimony the two doctors provided.

¶ 37    To explain our conclusion concerning defendant's ineffective assistance of counsel claim, we will discuss in some detail the procedure regarding the proffer of expert testimony. But first we will discuss the law that applies when a defendant claims that he received ineffective assistance of counsel.

¶ 38                    1. *The Law Regarding Ineffective Assistance of Counsel*

¶ 39    All defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Pope*, 2020 IL App (4th) 180773, ¶ 61, 157 N.E.3d 1055.

¶ 40    To demonstrate deficient performance, a defendant must show his counsel's performance fell below an objective standard of reasonableness. *Id.* ¶ 62. Because the constitution guarantees only reasonably competent counsel, it is not sufficient for a defendant to show that counsel's representation was imperfect. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Instead, a defendant must show his counsel's representation undermined the proper functioning of the adversarial process to such an extent that the defendant was denied a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686).

¶ 41　　To demonstrate prejudice, a defendant must show "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767). " 'The likelihood of a different result must be substantial, not just conceivable.' " *Pope*, 2020 IL App (4th) 180773, ¶ 63 (quoting *Harrington*, 562 U.S. at 112). " 'A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness.' " *Id.* (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601).

¶ 42　　A defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327, 948 N.E.2d 542, 547 (2011). Strategic choices are virtually unchallengeable. *Id.* at 333.

¶ 43　　　　　　　　　　2. *Expert "Certification" by the Trial Court*

¶ 44　　As we discuss later, we conclude that trial counsel's actions in this case constituted trial strategy. However, because defendant also complains that trial counsel failed to object to the testimony of the doctors who, defendant asserts on appeal, (1) "were not certified by the circuit court as experts in the field of sexual assault injuries or gynecology" and (2) "were never submitted or recognized as experts," we will also address these complaints. As we explain, we conclude that, even if trial counsel's actions were not a matter of trial strategy, defendant's argument that a defendant's trial counsel must object to "non-certification of experts" is meritless, and we reject it in its entirety.

¶ 45　　　　　　　a. The Difference Between an Expert Witness and a Lay Witness

¶ 46　　The Illinois Rules of Evidence regarding expert witnesses contain no requirement that the trial court "certify" a witness before that witness may provide opinion testimony. Instead, the question is whether the foundational requirements for that testimony have been laid. Ill. Rs. Evid. 702 to 705 (eff. Jan. 1, 2011). And, in any event, "certification" is the wrong term because trial courts never "certify" expert witnesses. Instead, they determine, in the sound exercise of their discretion, whether a sufficient foundation has been laid regarding a particular witness to permit that witness to render an opinion.

¶ 47　　We note that this is the fundamental difference between witnesses who testify as experts and those who do not. Expert witnesses are permitted to render opinions within their area of expertise, while lay witnesses (that is, nonexperts), with very few exceptions, may not render opinions. The testimony of lay witnesses is typically limited to matters within their personal knowledge—that is, what they did, saw, heard, smelled, tasted, or touched. We agree with what the First District wrote on this subject in *People v. Himber*, 2020 IL App (1st) 162182, ¶ 33, 150 N.E.3d 148:

　　　　"Illinois law is clear that '[a]dmissible testimony is limited to matters of which the witness has personal knowledge through his own senses' [citation] and that 'a witness may only testify to *facts* within his own personal knowledge and recollection, and may not draw inferences and conclusions.' " (Emphasis in original.) (quoting *People v. French*, 2017 IL App (1st) 141815, ¶ 68, 72 N.E.3d 1214).

¶ 48                                    b. The Trial Court's Use of the Term
                                    "Expert" in Front of the Jury Is Questioned

¶ 49        Concerning the proffer of expert testimony, attorneys and trial courts frequently proceed as defendant on appeal suggests should have happened in this case. First, the attorney seeking to present expert testimony typically lays the foundation by asking a witness questions about the witness's background, education, training, and experience. Second, the attorney turns to the judge and says, "Your Honor, the State tenders Dr. Smith as an expert in toxicology." Third, the opposing party is given the opportunity to state that party's objection, if any, or alternatively to conduct a *voir dire* examination of the witness regarding the witness's qualifications. Last, the judge says, "The court finds a sufficient foundation has been laid and accepts Dr. Smith as an expert in toxicology." And all of this takes place in open court in front of the jury. While this course of action is common practice in courtrooms in Illinois and throughout the country, we recommend against it.

¶ 50        We suggest that, when a trial court makes the determination that a witness is qualified to give opinion testimony, it is never necessary or appropriate for the court to use the term "expert" in front of the jury. In support of this view, we cite the advisory committee's notes (Advisory Committee Notes) to Federal Rule of Evidence 702, in which the committee wrote the following:

> "The use of the term 'expert' in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an 'expert.' Indeed, there is much to be said for a practice that prohibits the use of the term 'expert' by both the parties and the court at trial. Such a practice 'ensures that trial courts do not inadvertently put their stamp of authority' on a witness's opinion, and protects against the jury's being 'overwhelmed by the so-called "experts." ' [Citation.]" Fed. R. Evid. 702, Advisory Committee Notes (amended 2000).

We note that for reasons we discuss later, we do not agree that the *parties* should be prohibited from using the term "expert"; that prohibition should apply only to the *trial court*.

¶ 51        When a trial court uses the term "expert" in front of a jury, it creates a danger that the court's authority is being associated with the expert's authority. See Charles R. Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules Evidence in Civil and Criminal Jury Trials*, 154 F.R.D. 537, 541 (1994); see also Evan Bruno, *Better Practice—Let a Witness' Record Speak For Itself Without The Expert Label*, Chi. Daily L. Bull. (Aug. 19, 2014) ("The judge's determination is based on the same evidence the jury has just heard, and his open declaration of that determination does nothing but give the jury exactly what they should not have: outside commentary upon the witness's credibility."). Even the American Bar Association has advised, "The court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so." Am. Bar Ass'n, Civil Trial Practice Standards 29 (updated Aug. 2007), https://www.americanbar.org/content/dam/aba/administrative/litigation/leadership-portal/ctps.pdf (last visited July 29, 2021) [https://perma.cc/JG24-TSR2].

¶ 52        Juries may give more weight to testimony from "experts" merely because the common meaning of the word—when used by the judge—may cause the jury to presume the witness demands more attention and credence than other witnesses. Richey, *supra*, at 544. In short, when a court declares that a witness is an "expert" in his or her field, it confers the judicial

imprimatur of authority and credibility, which thereby inappropriately augments the witness's stature while simultaneously detracting from the court's position of neutrality.

¶ 53   Famed trial lawyer Irving Younger explained the advantage to be gained from a trial lawyer's perspective by seeking to have the court declare a witness to be an expert, as follows:

"[Y]ou say to the judge something like, 'Your Honor, I ask the court to declare Dr. Elko an expert in the field of physiology.'

Now, you see, all you're doing is saying to the judge, 'Your Honor, with respect to *** whether the expert can give his opinion, have I done it, Judge? Have I done it?' And, of course you've done it, so the judge says, 'Yes.' How does the jury hear it? The jury hears it as the judge certifying that your expert is an expert. The *judge's* authority begins to be associated with your expert's authority. And since the judge is the ultimate figure in the courtroom, it's a very nice phenomenon to have working for you." (Emphasis in original.) Irving Younger, *A Practical Approach to the Use of Expert Testimony*, 31 Clev. St. L. Rev. 1, 16 (1982).

¶ 54   Commenting on this very statement from Irving Younger, Professor Paul F. Kirgis noted, "[T]he kind of express expert certifications advocated by Judge Younger and appearing so frequently in trial transcripts are not required. They are, in fact, fundamentally at odds with basic principles regarding the role of the judge in the courtroom." Paul F. Kirgis, *Curtailing the Judicial Certification of Expert Witnesses*, 24 Am. J. Trial Advoc. 347, 348 (2000). Kirgis explains that this odd practice never occurs regarding other preliminary questions; for example, no attorney of any merit would ever ask the judge to declare that the witness has personal knowledge. *Id.* at 351.

¶ 55   Instead of calling witnesses "experts" or having the judge "certify" a witness as an expert in front of the jury, counsel should either (1) address the matter with the trial court pretrial or (2) simply lay the proper foundation in open court before the jury and then ask to approach the bench for a sidebar at which counsel could ask the trial court if the court agrees that a sufficient foundation has been established so that counsel could then ask the witness questions calling for opinions.

¶ 56   Obviously, the jury should be permitted to hear all foundational evidence regarding a witness whom a party seeks to have testify as an expert, as well as any *voir dire* by opposing counsel, but the jury need not be privy either to argument about the witness's expert qualifications or the court's ultimate determination.

¶ 57   As we mentioned earlier, our suggested limitation on the use of the term "expert" applies only to the trial court, not the parties. The problem to be avoided is the court's putting its judicial imprimatur upon the background or testimony of any purported expert. That problem simply does not exist when the parties are arguing their cases to the jury. In fact, closing argument is precisely the proper time for counsel to argue to the jury why certain witnesses or evidence should be believed or not. See *People v. Neal*, 2020 IL App (4th) 170869, ¶ 170, 150 N.E.3d 984.

¶ 58      c. Select State and Federal Courts Agree With the Suggestion That Trial
Courts Should Not Use the Term "Expert" in Front of the Jury

¶ 59      Courts have long recognized the problem with judicial commentary on trial evidence. In 1933, the United States Supreme Court, reflecting on a particularly improper comment from a trial judge, noted,

> "His definite and concrete assertion of fact, which he had made with all the persuasiveness of judicial utterance, as to the basis of his opinion, was not withdrawn. His characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." *Quercia v. United States*, 289 U.S. 466, 472 (1933).

¶ 60      Other courts of review have explained that trial courts should not designate certain witnesses as "experts" in front of the jury. The Sixth Circuit has noted that, "although the practice is different in some state courts, the Federal Rules of Evidence do not call for the proffer of an expert after he has stated his general qualifications." (Emphasis omitted.) *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

¶ 61      The only role a trial court should play is to determine whether a witness is qualified to render an opinion. *State v. McKinney*, 917 P.2d 1214, 1233 (Ariz. 1996), *overruled on other grounds by State v. Martinez*, 999 P.2d 795 (Ariz. 2000). In *McKinney*, the Arizona Supreme Court wrote the following:

> "We do not recommend, however, the process of submitting a witness as an expert. The trial judge does not decide whether the witness is actually an expert but only whether the witness is 'qualified as an expert by knowledge, skill, experience, training, or education *** [to] testify *** in the form of an opinion or otherwise.' Ariz. R. Evid. 702. By submitting the witness as an expert in the presence of the jury, counsel may make it appear that he or she is seeking the judge's endorsement that the witness is to be considered an expert. The trial judge, of course, does not endorse the witness's status but only determines whether a sufficient foundation has been laid in terms of qualification for the witness to give opinion or technical testimony." *Id.* at 1232-33.

¶ 62      As the Eighth Circuit has pointed out,

> "there is no requirement that the court specifically make that finding in open court upon proffer of the offering party. Such an offer and finding by the Court might influence the jury in its evaluation of the expert[,] and the better procedure is to avoid an acknowledgement of the witnesses' expertise by the Court." *United States v. Bartley*, 855 F.2d 547, 552 (8th Cir. 1988).

¶ 63      A court's referring to a witness as an expert provides no additional probative value regarding the witness's qualifications; instead, it merely adds an additional prejudicial effect upon the jury regarding the witness's credibility. Richey, *supra*, at 553; see also *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007) (noting that, when a court declares that a witness is an expert, "it lends a note of approval to the witness that inordinately enhances the witness's stature and detracts from the court's neutrality and detachment").

¶ 64                           d. Conspiracy—an Analogous Situation

¶ 65    An analogous situation is provided by Illinois Rule of Evidence 801(d)(2)(E) (eff. Oct. 15, 2015), which allows for the admission of statements of a coconspirator that would otherwise be inadmissible hearsay. For a statement to be admitted under this rule, the trial court must first make a preliminary determination that enough evidence has been presented to show the existence of a conspiracy. However, when deciding whether to admit evidence of a coconspirator's statement, a trial court would not—and should not—state to the jury, "Ladies and gentlemen, I am going to allow this statement because I find that Mr. Jones and Mr. Smith were engaged in a conspiracy." Instead, the judge would make that determination outside the presence of the jury. The Sixth Circuit has explained why, as follows:

> "[The trial judge] should refrain from advising the jury of his findings that the government has satisfactorily proved the conspiracy. The judge should not describe to the jury the government's burden of proof on the preliminary question. Such an instruction can serve only to alert the jury that the judge has determined that conspiracy involving the defendant has been proven by a preponderance of the evidence. This may adversely affect the defendant's right to a trial by jury. The Judge's opinion is likely to influence strongly the opinion of the individual jurors when they come to consider their verdict and judge the credibility of witnesses." *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979).

¶ 66    The *only* difference between a court's declaring that (1) a witness may testify as an expert and (2) the evidence shows that a conspiracy existed is the extent of the prejudice involved. The result is the same—namely, a judge should avoid making statements in front of the jury that may be viewed by the jury as judicial commentary on the evidence or on what weight the jury should give it.

¶ 67                                     3. *This Case*

¶ 68    We conclude that postconviction counsel was correctly allowed to withdraw because trial counsel's decision not to object to the expert testimony of the two doctors was trial strategy.

¶ 69    The testimony at issue occurred when Dr. Adams and Dr. Silwa, both emergency room physicians, testified "regarding the frequency of vaginal trauma in sexual-assault victims."

¶ 70    Here, trial counsel presumably made the decision that objecting to the experts' opinion testimony would prove fruitless because of their experience dealing in emergency rooms with victims of sexual violence. In addition, trial counsel's clearly preferred trial strategy was to use the testimony of the physicians to attempt to undermine the testimony of both A.H. and K.S. because neither physician found evidence of physical trauma that would have corroborated the complainants' testimony.

¶ 71    A serious defect in defendant's argument about the testimony of the physicians can be found in a single statement in defendant's brief: "But, then both the State and defense counsel elicited improper expert testimony that was not related to the physicians' treatment of K.S. and A.H." Clearly, if *defense counsel* was using the doctors in a similar manner as the State, defense counsel made a decision that was trial strategy to allow both physicians to give those opinions.

¶ 72                    C. Postconviction Counsel Provided Reasonable Assistance

¶ 73         Last, we note that defendant also claims that postconviction counsel failed to provide reasonable assistance because counsel failed to object in a timely manner to the State's motion to dismiss. For the reasons we explained earlier, defendant failed to state the gist of a constitutional claim, and any error related to the motion to dismiss was harmless.

¶ 74                                    III. CONCLUSION

¶ 75         For the reasons stated, we affirm the trial court's judgment.

¶ 76         Affirmed.

¶ 77         JUSTICE HARRIS, specially concurring:

¶ 78         I agree with the decision to affirm. However, I do not join in paragraphs 48-66 (*supra* ¶¶ 48-66) and do not endorse the majority's critique of a trial judge finding, in front of a jury, that a witness is qualified to testify as an expert.