NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190619-U

NO. 4-19-0619

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ISAAC A. FREEMAN, | ) | No. 14CF845 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's denial of defendant's postconviction petition after conducting a third-stage evidentiary hearing.

¶ 2   Following a March 2015 bench trial, the trial court found defendant, Isaac A. Freeman, guilty of promoting juvenile prostitution (720 ILCS 5/11-14.4(a)(1) (West 2012)) and sentenced him to 12 years in prison. In December 2017, defendant *pro se* filed a postconviction petition in which he claimed he was denied the right to effective assistance of trial counsel. At defendant's request, the trial court appointed counsel, who filed an amended postconviction petition.

¶ 3   In July 2019, the trial court conducted a third-stage hearing at which multiple witnesses testified. At the conclusion of the third-stage hearing, the trial court ruled against defendant, concluding that he was not denied the effective assistance of counsel. Defendant

appeals, and we affirm.

¶ 4                                    I. BACKGROUND

¶ 5        Defendant's claim that he received ineffective assistance of counsel is primarily

based upon the allegation that defendant's trial counsel failed to investigate and call Brittany

Stafford and Kathy Flairty to testify at defendant's trial.  Thus, to put defendant's claim in

context, we review the evidence presented at defendant's March 2015 bench trial.

¶ 6                         A.  The Events Leading to the Charges

¶ 7        The following evidence was presented at defendant's bench trial.  In July 2014,

defendant lived with Kathy Flairty in Bloomington, Illinois.  Flairty's niece, M.S., was 17 years

old in July 2014 and lived with Flairty and defendant.  A.J. was M.S.'s friend.

¶ 8        According to the statements A.J. and M.S. gave to the police, defendant posted an

advertisement in July 2014 on Backpage.com (Backpage) for a massage with two girls.  M.S.

testified that Backpage is a website where individuals can post advertisements for property, jobs,

and services in Bloomington.  Robert Reed sent text messages to the cell phone number listed on

the advertisement.  After receiving Reed's texts, defendant, M.S., and A.J. went, by cab, to the

Red Roof Inn.  Defendant was first to get out of the cab.  He walked up to the Red Roof Inn, and

then he walked away.  Minutes later, Reed arrived at the hotel in a pickup truck.  The two girls

then exited the cab, walked to the pickup truck, and began talking with Reed.  Shortly thereafter,

Reed, M.S., and A.J. went into the Red Roof Inn.  However, they later exited the hotel because

they were unable to rent a room.

¶ 9        Bloomington police detective Michael Johnson happened to be viewing these

events from across the street while eating lunch at a restaurant, and he suspected prostitution was

involved.  Johnson requested police backup.  Johnson described the physical appearance of

defendant and asked other officers to stop defendant for questioning if they could find him. Based on Johnson's physical description of the defendant, Bloomington police officers arrested him a few blocks away from the hotel, and he had a cell phone in his possession.

¶ 10   When Johnson first spoke to M.S. and A.J. at the hotel, they told him that they arrived at the hotel to "hang out with" defendant's friend. However, M.S. and A.J. stated that they did not know the name of the person they were supposed to hang out with. After speaking with Reed, M.S., and A.J., Johnson placed all three of them under arrest.

¶ 11   The police then interviewed the suspects at the police station. Reed explained that he sent text messages to the cell phone number listed on the Backpage posting because he intended to have sex with the two women listed in the posting. The cell phone number on the Backpage posting belonged to Kathy Flairty. Defendant was in possession of Flairty's phone when he was arrested.

¶ 12   During her recorded interrogation, M.S. admitted that she and A.J. went to the hotel to have sex for money. M.S. said that defendant had arranged this deal and that he would receive a percentage of the money they earned. A.J., in her recorded interview, stated that defendant had posted the Backpage advertisement. A.J. also accused defendant of arranging the deal.

¶ 13                    B. The Indictment

¶ 14   The grand jury indicted defendant on two counts. Count I charged defendant with promoting juvenile prostitution (720 ILCS 5/11-14.4 (a)(1) (West 2012)), alleging the following:

> "Isaac A. Freeman on or about the 22nd day of July, 2014 in the County of
> McLean, State of Illinois, committed the offense of promoting juvenile
> prostitution in that the defendant advanced prostitution in that defendant arranged

a meeting of persons for the purpose of prostitution and M.S., one of the persons offered for prostitution, was under 18 years of age *** in violation of 720 ILCS 5/11-14/4 (a)(1)."

¶ 15        Count II charged defendant with promoting prostitution (720 ILCS 5/11-14.3(a)(1) (West 2012)), alleging the following:

"Isaac A. Freeman on or about the 22nd day of July, 2014 in the County of McLean, State of Illinois, committed the offense of promoting prostitution in that the defendant advanced prostitution in that he arranged a meeting of persons for the purpose of prostitution *** in violation of 720 ILCS 5/11-14.3 (a)(1)."

¶ 16                            C.  The Bench Trial

¶ 17        In December 2014, the trial court began defendant's bench trial on both counts. However, the trial was not completed until March 2015.  At trial, M.S. recanted her prior statements made during the police interrogation.  She testified that she had posted the Backpage posting and that it was not for prostitution.  M.S. further stated that defendant had nothing to do with the arrangement.  In response, the State introduced her prior recorded statements to Johnson that incriminated defendant.  The trial court admitted these statements as substantive evidence. See 725 ILCS 5/115-10.1(c)(2)(C) (West 2012).

¶ 18        A.J. likewise testified that defendant was not involved in the Backpage posting and that she and M.S. did not go to the hotel for prostitution.  The State also introduced her prior recorded statements made to Johnson as substantive evidence, which incriminated defendant. See *id.*

¶ 19        Reed testified that he responded to the Backpage posting to have sex with the two girls listed in the posting.  He stated that he went to the Red Roof Inn after sending text messages

- 4 -

to the cell phone number listed on the posting. Reed testified that he had a pending criminal case arising from this transaction and that he had not received a plea offer from the State.

¶ 20　　　　Johnson testified that he observed defendant, M.S., and A.J. arrive at the Red Roof Inn in a cab. Johnson explained that he was suspicious because the cab parked far away from the hotel, the individuals arrived at the hotel with no luggage, and the hotel was in a high crime area known for prostitution. Johnson testified that defendant exited the cab, walked up to the hotel, and then walked away.

¶ 21　　　　In closing argument, defendant argued that the State failed to prove him guilty beyond a reasonable doubt of promoting juvenile prostitution because (1) the State failed to produce the actual Backpage posting or the text messages sent by Reed, (2) Reed was not credible because of his desire for a favorable plea offer, (3) the statements by M.S. and A.J. during their interrogations were false, and (4) the State failed to prove that defendant knew M.S. was a minor.

¶ 22　　　　The trial court found defendant guilty of promoting juvenile prostitution (count I) and promoting prostitution (count II) and merged the convictions. The court found the in-court testimony of M.S. and A.J. to be "flat-out lies." Conversely, the court found that their incriminating statements made to the police during their recorded interrogations were truthful. Further, the court found that the testimony of Reed and Johnson was credible. The court also found that defendant's possession of the cell phone listed on the Backpage posting was circumstantial evidence of his guilt. Finally, the court found that defendant had knowledge of M.S.'s age because of his long-standing relationship with both M.S. and Flairty, her aunt. The court later sentenced defendant to 12 years in prison.

¶ 23　　　　　　　　　　D. Defendant's Direct Appeal

¶ 24        Defendant appealed his conviction, arguing that (1) flaws in his indictment prejudiced his defense and (2) the State failed to prove him guilty beyond a reasonable doubt. This court disagreed with those arguments and affirmed. *People v. Freeman*, 2017 IL App (4th) 150367-U.

¶ 25                        E.  The Postconviction Petition

¶ 26        Defendant filed his postconviction petition in December 2017, and it was ultimately heard and denied after a third-stage hearing by the same judge who presided over defendant's March 2015 bench trial.

¶ 27        In defendant's petition, he alleged, in part, that he was denied the right to effective assistance of counsel because his trial counsel failed to interview Brittany Stafford and Kathy Flairty.  The trial court appointed counsel for defendant on his petition and moved the matter to the second stage of postconviction proceedings.  In June 2018, defendant's counsel filed an amended postconviction petition, alleging that trial counsel had been ineffective because he failed to speak with or call as witnesses at trial Flairty and Brittany Stafford.  The amended petition also asserted that appellate counsel had been ineffective for failing to raise these claims on appeal.

¶ 28                        F. The Third-Stage Evidentiary Hearing

¶ 29        After denying the State's motion to dismiss the petition, the trial court moved the proceedings to a third-stage evidentiary hearing that occurred in July 2019.  At that hearing, defendant, Flairty, and Brittany Stafford all testified, as did Ron Lewis, who was defendant's trial counsel.

¶ 30        Defendant testified that he wanted Lewis to talk to Brittany Stafford and Flairty, among others.  Defendant said Lewis informed him he would speak with or send an investigator

to speak to all of those people.

¶ 31    Kathy Flairty testified that she had been in a seven-year-long relationship with defendant and they were living together on the date the offenses. At that time, she lived with defendant, her sister, Cynthia Stafford, and her sister's two daughters, M.S. and Brittany. She testified about the events of the day defendant was arrested and about the people who used her cell phone on that date. She admitted defendant used her phone and often had her phone while she was at work. She stated she never spoke with defendant's trial counsel, Lewis.

¶ 32    Brittany Stafford testified that defendant was her aunt's boyfriend and, when he was paroled from prison, he lived at her mother's house. Brittany's sister was M.S., whom Brittany knew used Flairty's cell phone and texted Robert Reed to exchange sex for money on July 22, 2014, the date defendant was arrested. Brittany Stafford stated that M.S. had been doing that type of thing for about a year or two. Brittany Stafford also wrote an affidavit explaining that her sister, M.S., had been "doing back page way before [defendant] was even introduced to us," although she admitted that she had never seen an advertisement that her sister allegedly posted on Backpage. She also admitted that (1) she was never with M.S. when she engaged in prostitution and (2) she was not close with M.S.

¶ 33    Brittany had a conviction for unlawful possession of a credit card in February 2013, and in September 2014, she was convicted of retail theft.

¶ 34    Ron Lewis testified that he had 27 years of experience as a criminal defense lawyer and had tried 50 to 80 jury trials. He testified about his review of the discovery materials, his discussions with defendant, and his decisions regarding whom to call at trial and whom not to call.

¶ 35    Lewis spoke with Flairty but not Brittany Stafford. Based upon what he learned

from the police reports, he decided he did not want to call either of them as witnesses. Flairty was not an occurrence witness, and her testimony "was not worth putting on because it may [have opened] the door to other evidence we were trying to keep out." Lewis did not want to call Brittany Stafford because (1) she did not have anything significant to add to the defense and (2) "she had some impeachable issues as well." He also mentioned that Brittany was "irate and needed medication for her temper."

¶ 36                        G. The Trial Court's Ruling

¶ 37         After hearing the evidence presented at the third-stage evidentiary hearing, the trial court denied defendant's petition. In doing so, the court first appropriately discussed the law applicable to a claim of ineffective assistance of counsel, as well as the defendant's burden of proof in a third-stage postconviction evidentiary hearing. Then, in its ruling, the court, in part, stated the following:

> "Credibility of witnesses is an issue, just as it was at the trial, at a third stage evidentiary hearing.
>
> * * *
>
> [The court has considered the] trial strategy on the part of Mr. Lewis not to call [Brittany Stafford]. He had reviewed the discovery and he would have been aware then, based upon that information, that she had no relevant and/or admissible testimony. She could not, as evidenced by her testimony that she presented during the evidentiary hearing in the third-stage hearing, she could not have laid the foundation for certain evidence and other evidence, or testimony that she provided would have been inadmissible based upon it being hearsay and there being no exception to her testimony.

- 8 -

In addition, Mr. Lewis indicated that another reason that he didn't call her was he was aware of Brittany Stafford having impeachable offenses, and that would further detract from what weight or credibility to give to her testimony. And he, meaning Mr. Lewis, also indicated that [M.S.] had already said at trial the matters of the subject that Brittany Stafford would have testified to in the event, again, that there would have been some basis under the rules of evidence for such testimony to be elicited where there was none.

***

*** [T]he [c]ourt also notes that Mr. Lewis indicated that he was aware of the prior conviction of Brittany Stafford. The State brought out on cross examination with Ms. Stafford during her testimony that her prior convictions were for offenses relating to crimes of dishonesty and deceit, which would further have impacted and reinforced Mr. Lewis's decision not to call her as a witness.

*** Mr. Lewis also indicated he did not promise that he would interview them, because he had to take into consideration within a matter of trial strategy the discovery that was there, what statements and affidavits that had been provided to him, whether they were consistent or inconsistent with other statements that had been made to third parties or that Mr. Lewis may have been in possession of. And purely because a defendant requests that his or her attorney contact certain witnesses doesn't require a defense counsel to do so. *** [B]ut by analogy, if a defendant indicated that he wanted his attorney to talk to former President Obama or Beyoncé, and if the attorney didn't do so, that then that would raise the basis for ineffective assistance of counsel because counsel did not choose

to speak to those individuals to have some relevant, material information within their personal knowledge. And counsel, meaning Mr. Lewis, indicated the bases upon which it was why he elected as a matter of sound trial strategy not to call those witnesses.

So, first, the [c]ourt finds that the performance of Mr. Lewis was not deficient. The [c]ourt also finds that even if those witnesses had been called, not a product of sound trial strategy; but, nonetheless, if Mr. Lewis had done so, that it certainly would not have changed the ultimate outcome of the trial and, therefore, the [d]efendant did not suffer prejudice. So, as a result, the [c]ourt finds that the amended post-conviction petition of the [p]etitioner ought and will be denied."

¶ 38 As noted, the trial court ruled against defendant, concluding that he was not denied the effective assistance of counsel. Defendant appeals, and we affirm.

¶ 39                                    II. ANALYSIS

¶ 40                      A. The Law Applicable to Defendant's Claim

¶ 41 To address defendant's claim, we apply the law that governs postconviction petitions and claims of ineffective assistance of counsel.

¶ 42                      1. *The Law Regarding Postconviction Petitions*

¶ 43 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a remedy for criminal defendants who were substantially deprived of their state or federal constitutional rights in the proceedings leading to their conviction. *People v. Henderson*, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996). Proceedings under the Act are collateral in nature and not an appeal from the defendant's conviction or sentence. *Id.*

¶ 44    Proceedings under the Act are divided into three stages. *People v. English*, 2013 IL 112890, ¶ 23, 987 N.E.2d 371. At the first stage, the trial court reviews the petition to determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition survives the first stage, the trial court will advance it to the second stage. *Id.* § 122-2.1(b).

¶ 45    At the second stage, the trial court may appoint counsel for the defendant to ensure the adequate presentation of the defendant's claims. *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006). The trial court may dismiss the petition at the second stage if, taking all well-pleaded facts as true, the defendant fails to demonstrate a substantial showing of a constitutional violation. *Id.* at 473.

¶ 46    At a third-stage hearing, "the trial court acts as a fact-finder, making credibility determinations and weighing the evidence. [Citation.] Accordingly, we review the court's decision to deny relief for manifest error." *People v. Reed*, 2020 IL 124940, ¶ 51. "Manifest error is 'clearly evident, plain, and indisputable.' [Citation.] Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98, 996 N.E.2d 617 (quoting *People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004)). Reviewing courts apply the manifestly erroneous standard in recognition of "the understanding that the post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 384, 701 N.E.2d 1063, 1073 (1998).

¶ 47        2. *The Law Regarding Claims of Ineffective Assistance of Counsel*

¶ 48   All defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Pope*, 2020 IL App (4th) 180773, ¶ 61, 157 N.E.3d 1055.

¶ 49   To establish deficient performance, a defendant must show his counsel's performance fell below an objective standard of reasonableness. *Id.* ¶ 62. It is not sufficient for a defendant to show that counsel's representation was imperfect because the constitution guarantees only a reasonably competent counsel. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Instead, a defendant must show his counsel's representation undermined the proper functioning of the adversarial process to such an extent that the defendant was denied a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686).

¶ 50   To show prejudice, a defendant must demonstrate "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 51          B. This Case

¶ 52   We thank the trial court for its helpful discussion of the evidence the court heard at the third-stage evidentiary hearing in this case. We quoted at some length from the trial court's remarks denying defendant's petition after the court concluded that third-stage hearing

because those remarks show that defendant's contention that the trial court's ruling constituted manifest error is utterly groundless.

¶ 53         In *People v. Carter*, 2021 IL App (4th) 180581, ¶¶ 66-71, this court recently wrote that a court of review should be deferential to a trial court's findings of fact, particularly when, as here, the trial court favors us with specific findings about whom it believes and whom it does not. Based upon the trial court's findings after it conducted the third-stage evidentiary hearing, we agree that defendant failed to meet either prong of the *Strickland* test that determines whether a defendant has been denied the effective assistance of counsel.

¶ 54                                III. CONCLUSION

¶ 55         For the reasons stated, we affirm the trial court's judgment.

¶ 56         Affirmed.